JORDAN ETH (SBN 121617)
JEth@mofo.com
CHRISTIN HILL (SBN 247522)
CHill@mofo.com
ALEXANDRA B. PLUTSHACK (SBN 313690)
APlutshack@mofo.com
SUSANA S. HERRERA (SBN 348147)
SHerrera@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-1905
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendants Unity Software Inc., John S. Riccitiello, Luis Felipe Visoso, and Ingrid Lestiyo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re UNITY SOFTWARE INC., SECURITIES LITIGATION | Case No.   5:22-cv-03962-EJD **UNITY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** Date:      October 12, 2023 Time:      9:00 a.m. Judge:     Hon. Edward J. Davila Dept.:     Courtroom 4 – 5th Floor Amended Complaint Filed: March 24, 2023 Trial Date: None yet set |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................... 1

II.     PLAINTIFFS FAIL TO PLEAD MATERIAL FALSITY ................................................ 2

        A.      The Opposition Confirms that Plaintiffs Lack Any Contemporaneous Facts to Support Their "Known Technical Flaws" Theory ........................................................... 2

        B.      The Opposition Confirms that The Challenged Statements Are Not "Necessarily Inconsistent" with the Existence of Technical Flaws ........................................... 5

        C.      Statements of Corporate Optimism Are Not Actionable ............................................... 9

III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ................... 10

        A.      Defendants' Access to Information Does Not Support an Inference of Scienter ........ 10

        B.      Defendants' Statements Do Not Support an Inference of Scienter ............................ 12

        C.      The CW Allegations Do Not Support an Inference of Scienter ................................. 13

        D.      Individual Defendants' Stock Sales Do Not Support an Inference of Scienter ........... 13

        E.      The Core Operations Inference Does Not Apply ....................................................... 14

        F.      Holistically Considered, Plaintiffs' Theory Is Not Cogent ......................................... 15

IV.     PLAINTIFFS FAIL TO PLEAD CONTROL-PERSON CLAIMS ................................... 15

V.      CONCLUSION ................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Atossa Genetics, Inc. Sec. Litig.*,
   868 F.3d 784 (9th Cir. 2017)............................................................................................. 6

*In re BioMarin Pharmaceutical Inc. Securities Litigation*
   No. 20-cv-06719-WHO, 2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ........................................ 9

*In re Daou Sys., Inc., Secs. Litig.*,
   411 F.3d 1006 (9th Cir. 2005)............................................................................................. 6

*In re Downey Sec. Litig.*,
   No. 08-cv-3261-JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009)....................................... 2

*In re Eventbrite, Inc. Sec. Litig.*,
   No. 18-cv-02019-EJD, 2020 WL 2042078 (N.D. Cal. April 28, 2020)..................................... 5

*Homyk v. ChemoCentryx, Inc.*,
   No. 21-cv-03343-JST, 2023 WL 3579440 (N.D. Cal. Feb. 23, 2023)................................. 9, 12

*In re Invision Tech. Sec. Litig.*,
   No. 04-cv-03181 MJJ, 2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ........................................ 3

*Johnson v. Costco Wholesale Corp.*,
   No. 18-cv-1611 TSZ, 2019 WL 6327580 (W.D. Wash. Nov. 26, 2019)................................... 2

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002)........................................................................................... 11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008)........................................................................................... 13

*In re Netflix, Inc. Sec. Litig.*,
   No. 04-cv-2978-FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005)...................................... 4

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014)........................................................................................... 15

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
   No. 15-cv-02938-HSG, 2018 WL 3126393 (N.D. Cal. June 26, 2018)................................... 15

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
   No.15-cv-02938-HSG, 2016 WL 7475555 (N.D. Cal. Dec. 29, 2016). ................................... 5

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004)....................................................................................... 11, 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014)........................................................................................... 15

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   No. 10-cv-03451-LHK, 2012 WL 1868874 (N.D. Cal. May 22, 2012) ................................... 11

*In re Quality Systems, Inc. Securities Litigation*,
   865 F.3d 1130 (9th Cir. 2017)............................................................................... 9, 11, 12

*In re Read-Rite Corp. Sec. Litig.*,
   335 F.3d 843 (9th Cir. 2003)...................................................................................... 5

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014)..................................................................................... 12

*In re Rigel Pharms., Inc. Secs. Litig.*,
   697 F.3d 869 (9th Cir. 2012)....................................................................................... 6

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001)...................................................................................... 5

*SEB Investment Management AB v. Wells Fargo & Co.*,
   No. 22-cv-03811 (N.D. Cal. Aug. 18, 2023)................................................................. 3

*Schueneman v. Arena Pharms., Inc.*,
   840 F.3d 698(9th Cir. 2016 )..................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ................................................................................................ 10

*In re U.S. Aggregates, Inc. Sec. Litig.*,
   235 F. Supp. 2d 1063 (N.D. Cal. 2002) ...................................................................... 3

*In re VeriFone Holdings, Inc. Securities Litigation*,
   704 F.3d 694 (9th Cir. 2012)..................................................................................... 12

*Weston v. DocuSign, Inc.*,
   No. 22-cv-00824-WHO, 2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ................................. 14

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ...................................................................................... 6

*Wozniak v. Align Tech., Inc.*,
   850 F. Supp. 2d 1029 (N.D. Cal. 2012) ................................................................... 9, 10

**Other Authorities**

15 U.S.C. § 78u-4(b)(2) .......................................................................................... 10

## I.     INTRODUCTION[1]

The Opposition confirms that the Amended Complaint fails to plead securities fraud. Plaintiffs' core theory is that the Unity Defendants misled investors by failing to disclose that Unity's ad monetization software, Audience Pinpointer, had "serious known technical flaws" throughout the Class Period. But the Amended Complaint suffers from a fatal defect: It alleges no particularized facts to show that there were, in fact, "serious" "technical flaws" during the Class Period, much less that the flaws were "known" to the Unity Defendants. Instead, Plaintiffs assume that the information that prompted the May 2022 disclosure regarding recent technical challenges was known to the Unity Defendants a full year earlier. As the Motion showed, this is a classic attempt to plead fraud by hindsight, which the Reform Act outlawed years ago.

Instead of addressing this fundamental flaw, the Opposition resorts to ramped up rhetoric and overstatements of the Amended Complaint's allegations. The Opposition contends that Audience Pinpointer had "rampant" and "massive" technical problems that "wreaked havoc," but relies exclusively on CW allegations that say nothing of the sort. Even when highlighting the key CW allegations in a chart (Opp. at 14-15), the Opposition cites only one witness (CW-1) who is alleged to describe events that occurred *during* the Class Period. Importantly, CW-1 does not even mention Audience Pinpointer, let alone "massive" and "serious known technical flaws" with the software. The other CWs fare no better. Ultimately, there is not a single well-pleaded factual allegation—from the CWs or otherwise—suggesting that Unity was experiencing "serious" "technical flaws" during the year-long Class Period.

Plaintiffs also fail to plead a strong inference of scienter. They claim Defendants "knew" they were misleading investors, but cite no document, meeting, email, report, or confidential

---

[1] The Unity Defendants submit this brief in reply to Lead Plaintiffs' Omnibus Brief in Opposition to Defendants' Motions to Dismiss (Dkt. 107, the "Opposition" or "Opp."). Defendants Sequoia and Silver Lake submit separate briefs. Plaintiffs concede that Defendant OTEE was dissolved in October 2021, has not been served, and is not a proper party. (Opp. at 1 n.1). Abbreviations and defined terms are the same as in Unity Defendants' Motion (Dkt. 103, the "Motion" or "Mot.").

1

witness showing what each Defendant knew regarding Audience Pinpointer when they made any Challenged Statement, let alone that they had fraudulent intent.

The Court should dismiss the Amended Complaint.

## II.    PLAINTIFFS FAIL TO PLEAD MATERIAL FALSITY

The Opposition presents a narrative devoid of particularized, contemporaneous facts showing the falsity of any Challenged Statement.

### A.    The Opposition Confirms that Plaintiffs Lack Any Contemporaneous Facts to Support Their "Known Technical Flaws" Theory

Plaintiffs do not dispute that the Amended Complaint relies exclusively on CW statements to support their "known technical flaws" theory. Nor do Plaintiffs dispute the Motion's showing that (1) almost all CW allegations concern events outside the Class Period, and (2) the only CW who speaks to Class Period events (CW-1) supports, rather than contradicts, the Unity Defendants' public statements that the key technical challenges with Audience Pinpointer arose weeks—rather than a full year—before the May 2022 announcement. (Mot. at 9-11.) Plaintiffs nonetheless argue that the alleged pre-Class Period technical issues somehow show the falsity of statements made during the Class Period, and, in any event, "the CWs cite myriad technical problems with Audience Pinpointer . . . *during the Class Period*." (Opp. at 13) (emphasis added). Plaintiffs are wrong on both counts.

First, Plaintiffs' pre-Class Period allegations do not establish the falsity of the statements made during the Class Period. Plaintiffs' meager factual allegations provide no indication that the alleged pre-Class Period problems persisted into the Class Period. Indeed, Plaintiffs concede that the CWs themselves explain that alleged pre-Class Period problems were resolved *before* the Class Period. (Opp. at 15 n.7.) Plaintiffs nonetheless vaguely insist that there were "many problems" (*id.*), but neither the Opposition nor the Amended Complaint explain these allegedly unresolved problems. Without more, "any inference that pre-Class Period practices continued during the Class Period amounts to unsubstantiated speculation." *Johnson v. Costco Wholesale Corp.*, No. 18-cv-1611-TSZ, 2019 WL 6327580, at *7 (W.D. Wash. Nov. 26, 2019); *see also In re Downey Sec. Litig.*, No. 08-cv-3261-JFW, 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21,

2

2009) (rejecting CW allegations that occurred outside of the class period).

To justify their reliance on pre-Class Period events, Plaintiffs cite two off-point cases. In *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, at 1065 n.1 (N.D. Cal. 2002), the court denied a motion to strike all pre-class period allegations, finding these allegations relevant to defendants' motive. In *In re Invision Tech. Sec. Litig.*, No. 04-cv-03181 MJJ, 2006 WL 538752, at *2, n.1 (N.D. Cal. Jan. 24, 2006), the court noted that pre-class period statements may be relevant when put forth "in support of the falsity of other statements made within the Class Period." Neither case supports the notion that pre-class period events show that the same events occurred during the class period. In any event, the Unity Defendants do not contend that all pre-Class Period events are ***categorically*** irrelevant. Rather, the Unity Defendants contend that the pre-Class Period problems that Plaintiffs reference ***here*** say nothing about events that occurred during the Class Period. Further, in both cases, the court found that the pre-class period allegations at issue were insufficient to establish falsity. *U.S. Aggregates*, 253 F. Supp. 2d at 1076; *Invision*, 2006 WL 538752, at *7.

This case is more like the recently decided case *SEB Investment Management AB v. Wells Fargo & Co.*, No. 22-cv-03811, slip op. (N.D. Cal. Aug. 18, 2023). In *SEB*, the plaintiffs alleged that defendants misled investors by failing to disclose that Wells Fargo was conducting "widespread sham interviews" as part of a diversity hiring program. *SEB*, at 10. In granting defendants' motion to dismiss, the court found that, while the complaint alleged that sham interviews took place "before the start of the Class Period," "Plaintiffs did not adequately allege that sham interviews took place ***during*** the Class Period" or "that sham interviews were a widespread or systemic practice ***during*** the Class Period." *Id.* (emphasis added). This failing proved fatal in the *SEB* case. The same result is merited here.

Second, contrary to Plaintiffs' insistence otherwise, no CW describes "massive" technical problems with Audience Pinpointer "during the Class Period." The Opposition confirms this by including a chart presumably intended to highlight Plaintiffs' strongest CW allegations. (Opp. at 14-15.) Plaintiffs' chart shows that CW-1 mainly describes pre-Class Period events from November and December 2020, does not reference Audience Pinpointer, mentions only vague

3

problems like "unclean" data, and does not say whether or when these problems were resolved. (¶ 92.) Significantly, the only Class Period events described by CW-1 are entirely consistent with Unity's public statements. Specifically, CW-1 explains that the "biggest fire Unity had ever faced"—ingesting bad data from a customer—arose "in the weeks prior to the issue being made public." (¶ 128.) That is exactly what Unity said in its May 10, 2022, public statement. (Mot. at 9-10.) Likewise, Defendants' statements that these disclosed issues were caused by a "combination of different things," that Unity spent a "substantial amount of time" addressing these issues, or that reduced revenue was an "early sign[]" of these issues, are also—contrary to the Opposition's suggestion (Opp. at 15)—***consistent*** with Unity's disclosures that the Company experienced the issues "in February and March" of 2022 (*see* Ex. 9 at 4.)—not an entire year prior.

Plaintiffs' chart shows that the other CW allegations are similarly deficient. CW-2's allegations are vague as to time, the nature of the alleged problems, the nature of the complaints, and the magnitude of any alleged reduction in profits. (¶¶ 93, 105-109.) Plaintiffs also fail to explain how CW-2, who is not a software engineer, would have knowledge regarding the nature of the alleged "accuracy" issue with Audience Pinpointer. The chart also highlights that CW-3's allegations pre-date the Class Period, are vague as the timing and nature of the alleged problems, and confirm that the alleged problems were resolved before the Class Period. (Opp. at 14-15.)

Finally, Plaintiffs cannot save their claims by shifting the focus away from technical flaws and toward customer complaints broadly. The theory advanced in the Amended Complaint is that Unity was experiencing "massive problems" with Audience Pinpointer, which prompted a "barrage of customer complaints." (¶ 103.) Plaintiffs therefore allege that the customer complaints are part and parcel of the same unsupported fraud theory. In any event, customer complaints (like technical problems for a software company) are entirely routine and not indicative of fraud. *See, e.g.*, *In re Netflix, Inc. Sec. Litig.*, No. 04-cv-2978-FMS, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005) ("[E]very large company can expect to have some customer complaints, and the existence of such complaints fails to render Netflix's statements about its service false."). Here, the Amended Complaint does not plead sufficient factual allegations regarding the nature of the alleged complaints, whether or when they were addressed,

4

or any comparison to the previous level of complaints, that could establish that any of the Challenged Statements were false or misleading. Importantly, CW-1, who purports to describe "thousands" of complaint tickets, does not allege that even one of these complaint tickets mentioned Audience Pinpointer. (*See* ¶ 111.)

### B.    The Opposition Confirms that The Challenged Statements Are Not "Necessarily Inconsistent" with the Existence of Technical Flaws

The Opposition also confirms that Plaintiffs fail to allege that any Challenged Statement is "necessarily inconsistent" with the alleged facts. As explained in the Motion, Plaintiffs must plead "contemporaneous statements or conditions" showing the "misleading nature of the statements when made" (Mot. at 8 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001))), and those particularized facts must be "necessarily inconsistent" with the Challenged Statements (Mot. at 8 (quoting *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003))). This requires pleading "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality." (Mot. at 8 (quoting *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-cv-02938-HSG, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016)).) Plaintiffs do not address, let alone distinguish, any of these cases, or make any effort to satisfy this standard.

Indeed, Plaintiffs' Opposition does not even reference 31 of the 40 statements, implicitly abandoning any argument that the Amended Complaint satisfies the pleading requirements with respect to these Challenged Statements. Specifically, the Opposition makes no effort to rehabilitate Statements 2, 4-9, 11-13, 15, 16, 18, 19, 21- 26, 29-33, and 35-40. Instead, the Opposition (and the Plaintiffs' Statements Chart), merely repeats the same conclusion from the Amended Complaint that ***all*** of the Challenged Statements are false and misleading because they omit the alleged technical defects. (Opp. at 15-18; Appendix A to C. Fox Decl. ISO Opp.) This is not enough. *See In re Eventbrite, Inc. Sec. Litig.*, No. 18-cv-02019-EJD, 2020 WL 2042078, at *10-15 (N.D. Cal. April 28, 2020) (examining each statement in turn and finding that plaintiffs failed to allege that each statement was materially false or misleading).

Nor may Plaintiffs bypass pleading a material misstatement by relying on an "omission"

5

theory. Plaintiffs acknowledge that liability for alleged omissions only arises when statements affirmatively create an "impression of a state of affairs that differ[s] in a material way from the one that actually exist[s]." (Opp. at 17.) In other words, the omitted information must materially contradict an affirmative statement. *See In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 881 n.10 (9th Cir. 2012); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619-620 (9th Cir. 2022). Plaintiffs' own authority demonstrates that this is a high standard.  In *In re Daou Sys., Inc., Secs. Litig.*, 411 F.3d 1006, 1020 (9th Cir. 2005), defendants represented that attrition of technical employees was only 6.8% when, in fact, employee turnover exceeded 40%. In *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016), defendants stated that "all" animal studies supported the safety of a new drug, when a rat study showed that the drug was potentially carcinogenic. And in *In re Atossa Genetics*, *Inc. Sec. Litig.*, 868 F.3d 784, 797 (9th Cir. 2017), a statement that the FDA had raised minor concerns "among other matters" was misleading when the "other matters" omitted made up the "balance of the FDA's alleged serious concerns."

Here, as described below, Plaintiffs fail to show that the alleged omission renders any of the Challenged Statements misleading, or that any Challenged Statement is otherwise inconsistent with or contradicted by the omitted information.

**Statements about Audience Pinpointer were not misleading**. (Statements 5, 17, 22, 31.)[2] Plaintiffs respond to only one statement about Audience Pinpointer—Statement 17—which describes Audience Pinpointer's capabilities. The Opposition argues that this statement is misleading, "even if technically true," because it "omitted any mention of the failures of Audience Pinpointer that prompted 'thousands' (¶ 111) of customer complaints to flood Unity."

---

[2] Plaintiffs now assert that references to Unity's "contextual model" and "contextual approach" are references to Audience Pinpointer. (*See* Opp. at 15-16, 19, 25 (Statements 1, 20, 34).) There is nothing in the Amended Complaint, beyond conclusory assertions, to show that these terms are interchangeable. Regardless, Plaintiffs cannot establish that these statements were false or misleading when made (Mot. at 12-15), or amount to more than non-actionable corporate optimism (Mot. at 17-18).

6

(Opp. at 15-16.) Again, as described in Section II.A above, the Amended Complaint does not allege that even one of the "thousands" of customer complaints referenced by CW-1 cited technical problems with Audience Pinpointer, nor do Plaintiffs provide any baseline from which to measure the significance of "thousands" of complaints.

**Unity's general business statements were not misleading**. (Statements 1, 4, 7, 9-13, 15, 19, 23, 25, 28, 30, 33-40.) Plaintiffs respond to only four statements about Unity's business— Statements 1, 10, 28, and 34. In doing so, the Opposition relies on a flawed revenue analysis and asks the Court to infer, contrary to Unity's undisputed financial statements, that the Company was struggling. (Opp. at 17, 19.) Such an inference is not supported.

For one, the Opposition mischaracterizes the Amended Complaint's allegations. The Opposition argues that "Unity's quarter-over-quarter revenue had been falling for four quarters and was negative" when Statement 34 was made. (Opp. at 19.) The Amended Complaint contains no such allegation. Instead, the Amended Complaint alleges that *Operate's* quarter-over-quarter revenue *growth rate* slowed beginning in Q3 2021 (¶ 221) (though growth remained at 54% year-over-year (*see* Mot. at 4, Table 2)). But slower growth is still growth, and Plaintiffs' simplistic analysis fails to account for myriad other factors that could affect Operate's quarterly revenue growth beyond Audience Pinpointer. Further, Plaintiffs do not contest, and therefore concede, that a quarter-over-quarter analysis (as opposed to year-over-year) is out-of-step with standard financial reporting and fails to account for seasonality. (*See* Mot. at 24; *see, e.g.*, Ex. 2 at 1 (comparing Q2 2021 revenue to Q2 2020 revenue), Ex. 7 at 30-31 (discussing seasonality).)

Alternatively, Plaintiffs argue that Unity's reported revenue, while accurate, is nevertheless misleading because Unity "went on an acquisition spree during the Class Period," obscuring losses the Company was experiencing as a result of Audience Pinpointer. (Opp. at 17.) This conclusion is not supported by the Amended Complaint. Only *one* of the seven acquisitions during the Class Period (OTO, a voice recognition technology company that was absorbed into Unity's pre-existing text and chat platforms) is alleged to have been integrated into the Operate segment. (¶ 136.) Plaintiffs provide no basis to infer that OTO, or its voice recognition technology, provided any revenue—let alone significant revenue—for Unity.

7

**Statements about Apple's IDFA privacy changes were not misleading**. (Statements 6, 14, 18, 20, 24, 26, 27.) Plaintiffs respond to only three statements about Apple's IDFA privacy changes—Statements 14, 20, and 27. As detailed in the Unity Defendants' Motion, allegations in the Amended Complaint do not contradict—and, in fact, support—the Challenged Statements regarding Apple's IDFA privacy changes. (Mot. at 14-15.) Plaintiffs offer no response. Instead, Plaintiffs argue that these statements are false because (1) customers had been complaining "about the ineffectiveness of Unity's ad placement post-IDFA changes" and (2) "Unity's quarter-over-quarter revenue had been falling." (Opp. at 19.) As to the first point, the Amended Complaint does not allege that even one customer complaint referenced the ineffectiveness of Unity's ad placement, nor would any such complaints be necessarily inconsistent with the Challenged Statements regarding Unity's position following Apple's IDFA changes. As to the second, Plaintiffs again misrepresent Unity's financial results as alleged in the Amended Complaint, for the same reasons described above. Plaintiffs additionally challenged these statements for leaving analysts with the impression that Unity had a "competitive advantage" following Apple's IDFA changes. (Opp. at 22.) But Plaintiffs fail to allege *any* facts regarding Unity's competitive standing or how any such impression would be false or misleading.

**Statements about Unity's relationship with its customers were not misleading**. (Statements 2, 3, 8, 16, 21, 29, 32.) Plaintiffs respond to only one statement about Unity's relationship with its customers—Statement 3. Plaintiffs do not dispute that this statement (along with Statement 21) merely quotes real customer feedback. (Mot. at 16-17.) Instead, Plaintiffs assert that this statement was nevertheless misleading because Unity was experiencing "a flood of customer complaints about Audience Pinpointer." (Opp. at 19.) But, again, Plaintiffs allege no such thing. CW-1 recounts only that Unity experienced "thousands" of complaints during the Class Period, but does not allege that any of those complaints referenced Audience Pinpointer. (¶¶ 111-13). CW-2 recounts only vague allegations that some, unspecified number of customers experienced issues with the "accuracy" of the Audience Pinpointer tool. (¶ 106.) Nor can Plaintiffs establish how vague allegations of feedback from anonymous Unity customers—even a significant number of Unity customers—are inconsistent with quoting positive feedback from one

8

customer. Nor does the Opposition provide any response to the cases cited by Defendants that are directly on point. (Mot. at 16 (collecting cases).)

### C.    Statements of Corporate Optimism Are Not Actionable

Additionally, and independently, most of the Challenged Statements are non-actionable statements of corporate optimism, impermissibly vague, or purely aspirational. (Mot. at 17-18.)

Plaintiffs argue that the Challenged Statements are nevertheless actionable because they contain "factual statements" about "Audience Pinpointer's performance." (Opp. at 18.) Again, the cases Plaintiffs cite show what is missing here. In *In re Quality Sys., Inc. Sec. Litig.*, the court found actionable, statements that provided "concrete descriptions" of the company's sales pipeline, including expectations around "the number and type of prospective sales." 865 F.3d 1130, 1140 (9th Cir. 2017). In *In re BioMarin Pharms. Sec. Litig.*, the court found that statements touting the company's relationship with the FDA were actionable where they were "undergirded by factual assertions such as timelines for approval and inspections." No. 20-cv-06719-WHO, 2022 WL 164299, at *12 (N.D. Cal. Jan. 6, 2022). And in *Homyk v. ChemoCentryx, Inc.*, the court held "concrete . . . factual statements" that the company's product was "numerically superior to the active comparator" to be actionable, while finding "vague positive language" that the company's drug trial was "highly successful" not actionable. No. 21-cv-03343-JST, 2023 WL 3579440, at *16 (N.D. Cal. Feb. 23, 2023).

By contrast, the Challenged Statements here—including the examples cited in the Opposition (Statements 1, 3, 14, 20, 27, 34)—provide no concrete descriptions. For one, only a handful of statements even mention Audience Pinpointer (Statements 17, 22, and 31), and they merely describe the tool (Statement 17) or its strong performance (Statements 22 and 33). Numerous courts have found similar statements non-actionable. (*See* Mot. 17-18 (collecting cases).) The Opposition's attempt to distinguish the Motion's case law through arbitrary factual distinctions is unavailing. (Opp. at 19-20.) For example, Plaintiffs attempt to distinguish *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036-37 (N.D. Cal. 2012), because it involved a "pilot launch." This distinction is meaningless. *Wozniak* did not turn on the scale of the product release in finding statements that "we're getting really great feedback" non-actionable. Rather, the

9

decision turned on the nature of the statements themselves. (*Id.*)[3]

**III.     PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER**

Plaintiffs' Opposition also confirms they have not pled the "strong inference" of scienter for each Unity Defendant required by the Reform Act. 15 U.S.C. § 78u-4(b)(2). The Opposition fails to address, much less refute, the majority of the Unity Defendants' scienter arguments. (Mot. at 19-25.) Instead, Plaintiffs repeat the conclusory allegations of the Amended Complaint while relying on conjecture and impermissible inferences. Whether taken individually or together, Plaintiffs' scienter allegations do not raise a strong inference that any Defendant made any of the Challenged Statements with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (citation omitted).

**A.     Defendants' Access to Information Does Not Support an Inference of Scienter**

The thrust of Plaintiffs' scienter argument is that the Individual Defendants must have known about the alleged "massive" and "serious" technical flaws because they had "access to the undisclosed information." (Opp. at 23-24.) The Amended Complaints fails, however, to allege particularized facts that could support an inference that any Individual Defendant had access to information that disclosed the "serious known technical flaws." Specifically, Plaintiffs argue that Lestiyo "participated in meetings that specifically discussed the ads business"; Defendant Visoso "was part of a task force tasked with responding to the loss of IDFA data"; and Defendant Riccitiello "frequently made statements about Audience Pinpointer." (*Id.*) But Plaintiffs do not plead what information was discussed at these meetings or within the task force, let alone

---

[3] Additionally, two of the Challenged Statements (Statements 10 and 28) are protected by the Reform Act's Safe Harbor. (Mot. at 19, n. 10.) Plaintiffs argue that these statements are (1) "mixed statements" that include "embedded representations of fact" and (2) not accompanied by meaningful cautionary language." (Opp. at 20-21.) To the extent these statements are found to be "mixed statements," any representations of fact are not false for the reasons described in Section II.B. above. Further, the cautionary language here is tailored to the risks underpinning these statements—*i.e.*, risks regarding revenue expectations.

10

particularized facts indicating that these meetings covered the existence of "serious known technical flaws." Plaintiffs therefore ask the Court to infer not only that the Individual Defendants had the requisite state of mind based on "access to undisclosed information," but also that the undisclosed information revealed that the Challenged Statements were false. Such speculation falls far short of the strict pleading standard and has been repeatedly and consistently rejected. *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (finding no scienter where "plaintiffs merely assert in conclusory terms that the defendants had access to internal data" without "identify[ing] any internal reports . . . much less plead, in any detail, the contents of any such report or the purported data."); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012) ("The 'particularity' requirement of the PSLRA cannot be satisfied by a mere conclusory assertion that Defendants had 'access to, and use of the information[.]'").

The cases Plaintiffs cite in their Opposition only underscore this deficiency. (*See* Opp. at 24-25.) Plaintiffs rely heavily on *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004). In that case, the plaintiffs directly tied the statements at issue— forecasts about Oracle's third-quarter financial performance—to specific, identifiable underlying information known to the defendants that suggested that their statements were untrue when made. The court thus found a strong inference of scienter based on an overall record that included "specific allegations regarding large portions of Oracle's sales data," suspicious stock sales, improper revenue accounting records, and the fact that the CEO was directly and heavily involved in many of the deals whose disappearance accounted for the eventual third-quarter shortfall. *Nursing Home*, 380 F.3d at 1231-33, 1235. In so ruling, the court noted that "a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability." *Id.* at 1230-31. Here, Plaintiffs fail to allege the contents of any report or data allegedly provided to the Individual Defendants—let alone data that contradicts the Challenged Statements.

Plaintiffs' reliance on *Quality Systems* is also misplaced. (Opp. at 24.) In that case, the defendants made several bullish statements that the company's "pipeline continue[d] to build to

11

record levels" and "ke[pt] growing." *Quality Systems*, 865 F.3d at 1143. To establish scienter, the plaintiffs pleaded particularized allegations that the defendants "had access to and used reports documenting in real time the decline in sales during the Class Period"—the very information that contradicted the defendants' statements about sales. *Id.* at 1145. Again, not so here. Plaintiffs do not plead particularized facts establishing that any records contained information about purported massive technical flaws, let alone explain how the Individual Defendants were aware of information that contradicted the Challenged Statements.

### B.    Defendants' Statements Do Not Support an Inference of Scienter

Plaintiffs' argument that Defendants' statements about Audience Pinpointer support an inference of scienter (Opp. at 25-26) also fails. There are no allegations that the Individual Defendants discussed any ***problems*** with the tool (before May 2022). And Plaintiffs never explain why speaking about Audience Pinpointer suggests that the Unity Defendants were aware of "massive" or "serious" technical flaws.

In any event, Plaintiffs' authority shows what is missing here. In *Reese v. Malone*, defendants' assertion that they were unaware of an issue was "directly contradicted by the fact that [they] specifically addressed it" on other occasions. 747 F.3d 557, 572 (9th Cir. 2014). There is no such direct contradiction here. In *ChemoCentryx*, statements touting likely FDA approval for the pharmaceutical company's most promising drug candidate supported an inference of scienter because the complaint alleged that the defendant CEO was "personally aware" that the FDA expressed certain concerns about the product. 2023 WL 3579440 at *18. Here, there are no particularized allegations that the Individual Defendants were "personally aware" of the alleged "massive" technical flaws. Finally, *In re VeriFone Holdings, Inc. Sec. litig. Litigation* involved an earnings restatement following three consecutive quarters where internal reports showed that the company had fallen short of earnings projections. 704 F.3d 694, 698 (9th Cir. 2012). The Ninth Circuit affirmed a strong inference of scienter on the part of an individual defendant who was aware of the internal reports, deemed them "unacceptable," and directed accounting personnel to make unreasonable adjustments that brought earnings into line with expectations. *Id.* at 708. Again, there are no comparable allegations here.

12

The Opposition's assertion that Defendants made statements in response to analysts' questions about Audience Pinpointer is baseless. (Opp. at 26.) The Amended Complaint does not allege that any analyst inquired about Audience Pinpointer before the May 2022 announcement.

**C.     The CW Allegations Do Not Support an Inference of Scienter**

The Opposition does not challenge the Unity Defendants' summary of the CW allegations regarding scienter (Mot. at 20-21), nor attempt to explain how these limited CW allegations could establish scienter. Instead, Plaintiffs debate hearsay rules. (Opp. at 27-28.) The problem with the CW allegations is not just that they are hearsay; it is that the allegations—on their face—do not support what Plaintiffs allege. After months of investigating allegations of "serious known technical flaws," Plaintiffs were unable to find even one witness who could speak to this core allegation during the Class Period. The only inference, therefore, is that the Individual Defendants were ***not*** aware of "serious" "technical flaws" during the Class Period.

**D.     Individual Defendants' Stock Sales Do Not Support an Inference of Scienter**

Where, as here, the Amended Complaint lacks CW accounts or internal reports to support a strong inference of scienter, Plaintiffs must allege stock sales that are suspicious as to timing and amount. (Mot. at 21-23.) The Opposition confirms that Plaintiffs have failed to do so.

***Riccitiello's stock sales were not suspicious***. Rather than respond to the legal analysis raised in the Unity Defendants' Motion, Plaintiffs assert that Riccitiello sold 38% of his shares for an alleged $232 million gain and hope that the Court will balk at that number. (Opp. at 30-31.) But the Ninth Circuit is clear: To give rise to a strong inference of scienter, sales must be "dramatically out of line with prior trading practices" and "at times calculated to maximize" the defendant's benefit. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066-67 (9th Cir. 2008) (citation omitted). Plaintiffs do not make this showing.

Additionally, as the Motion showed, Plaintiffs' calculations overstate the percentage of Riccitiello's shares sold. (Mot. at 21.) In any event, Plaintiffs' Opposition does not challenge the Motion's showing that, under either calculation, courts in the Ninth Circuit typically require larger percentages of sales, especially when considered over a 12-month Class Period, and deviation from prior sales practices. (Mot. at 22.) Instead, Plaintiffs rely on cases that involved

13

sales made during a much narrower window of time and deviated from prior practices. (Opp. at 31.) For example, *Nursing Home* involved the sale of $900 million worth of stock **within a nine-day period** when the defendant had not sold any stock for the prior five years. 380 F.3d at 1232. Similarly, in *Weston v. DocuSign, Inc.*, one defendant sold 36% of her shares in a **single day** after making no sales in the prior three years. No. 22-cv-00824-WHO, 2023 WL 3000583, at *22 (N.D. Cal. Apr. 18, 2023). Here, Plaintiffs allege that Riccitiello "sold frequently and in large amounts in the months **leading up to the Class Period** (¶ 244), and made multiple trades over the course of the year-long Class Period. (Opp. at 31; Ex. 15.) That Riccitiello made money—even a lot of money—over the course of the year-long Class Period from the IPO of a company he led for six years prior does not support a strong inference of scienter.

Finally, Riccitiello's sales occurred pursuant to a 10b5-1 plan. Plaintiffs contend that these plans cannot "nullify" scienter where (1) the plans themselves were entered into at suspicious times, or (2) defendants delayed the release of negative news to circumvent their plans. (Opp. at 32.) But Plaintiffs allege no facts to support either inference here.

*Visoso's stock sales were not suspicious*. Plaintiffs allege only that Visoso "sold zero shares of stock" before the Class Period. (Opp. at 30.) But Plaintiffs do not dispute that Visoso sold **more** shares in the 12 months **after** the Class Period than he did during it, or that, of the only two sales Visoso made during the Class Period, one was made "automatically" to cover tax liabilities. (Mot. at 23.) Visoso's only other sale was at $124 per share, far from the stock's peak at $180 per share, and accounted for only 7% of his total holdings. (Ex. 17 at 2.)

*Lestiyo's stock sales were not suspicious*. Lestiyo's sales (under either Plaintiffs' or Defendants' calculation) were not large enough, by either amount or percentage, to establish scienter. (Mot. at 23.) Further, these sales were made regularly over a four-month period (*see* Ex. 16), and most sales were made pursuant to a 10b5-1 plan (¶ 251 n. 51). Additionally, Plaintiffs do not dispute that several of Lestiyo's stock sales were conducted automatically to address tax obligations, and as such, do not give rise to any inference of scienter. (Mot. at 23.)

### E.    The Core Operations Inference Does Not Apply

The Opposition contends that the core operations inference applies because Audience

14

Pinpointer was "important" to Unity. (Opp. at 28-29.) Saying something is "important" does not give Plaintiffs a free pass. Otherwise, scienter could be inferred anytime an alleged fraud is related to a significant component of any business, as is almost always the case. Rather, the theory allows a court to infer a defendant's knowledge of a fundamental fact bearing on core operations in the "rare circumstance" where it would be "absurd to suggest" that the defendant did not know that fundamental fact. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014). This is not that rare circumstance.

Plaintiffs try to conflate various Unity operations to bolster the importance of Audience Pinpointer. Plaintiffs allege that Operate—the segment in which the Audience Pinpointer tool sits—accounted for 65% of Unity's revenue and that "advertising revenue was the largest piece of the Company's Operate business." (¶¶ 3, 42.) But these bootstrapped facts allege nothing about the significance of Audience Pinpointer as a product, nor would any such allegation, without more, be sufficient to plead scienter through a core operations theory. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (no core operations inference regarding "flagship product"); *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-cv-02938-HSG, 2018 WL 3126393, at *9 (N.D. Cal. June 26, 2018) (same regarding "central cornerstone" of business strategy).

### F.     Holistically Considered, Plaintiffs' Theory Is Not Cogent

For the reasons described above, the Amended Complaint fails to support any inference of scienter—let alone a strong inference. Additionally, Plaintiffs provide no response to the nonculpable inferences described in the Motion: Unity experienced unexpected technical challenges in the weeks—not the year—leading up to its Q1 2022 earnings release, as supported by both Unity's May 10, 2022, announcement (Ex. 9) and Plaintiffs' own CW who alleges that the "biggest fire Unity had ever faced" occurred in May 2022 (¶ 128).

### IV.     PLAINTIFFS FAIL TO PLEAD CONTROL-PERSON CLAIMS

The Opposition does not dispute that Plaintiffs' claims under Section 20(a) fail with dismissal of the Section 10(b) claim. (Mot at 25.)

### V.     CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

15

Dated:        September 1, 2023        MORRISON & FOERSTER LLP


                                      /s/ Jordan Eth
                                      JORDAN ETH (SBN 121617)
                                      JEth@mofo.com
                                      CHRISTIN HILL (SBN 247522)
                                      CHill@mofo.com
                                      ALEXANDRA PLUTSHACK (SBN 313690)
                                      APlutshack@mofo.com
                                      SUSANA HERRERA (SBN 348147)
                                      SHerrera@mofo.com
                                      MORRISON & FOERSTER LLP
                                      425 Market Street
                                      San Francisco, California 94105-1905
                                      Telephone: 415.268.7000
                                      Facsimile: 415.268.7522

                                      *Attorneys for Defendants Unity Software Inc.,
                                      John S. Riccitiello, Ingrid Lestiyo, and Luis
                                      Felipe Visoso*

16