QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Harry A. Olivar, Jr. (Bar No. 143089)
  harryolivar@quinnemanuel.com
  Zoe K. Beiser (Bar No. 332155)
  zoebeiser@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

  Linda J. Brewer (Bar No. 217730)
  lindabrewer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

*Attorneys for Defendants Sequoia Capital Operations, LLC and SC US SSF 2013 (TTGP), LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE UNITY SOFTWARE INC. SECURITIES LITIGATION | Case No. 5:22-cv-03962-EJD |
| | **REPLY OF DEFENDANTS SEQUOIA CAPITAL OPERATIONS, LLC AND SC US SSF 2013 (TTGP), LLC IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | Judge:          Hon. Edward J. Davila<br>Hearing Date: October 12, 2023<br>Time:           9:00 a.m.<br>Ctrm:          4 |

Plaintiffs' Opposition makes clear that the Amended Complaint does not contain sufficient facts for Plaintiffs to maintain a control person claim against the Sequoia Defendants.[1]  The Opposition relies entirely on three allegations regarding control: (1) the Sequoia Defendants had minority stock ownership in Unity; (2) the Sequoia Defendants had a right to and did designate a single board member; and (3) the board member whom Sequoia designated signed Unity's 2021 Form 10-K.  Opp. at 38-41.  Under settled case law, these allegations fail to meet Plaintiffs' burden of alleging facts sufficient to state a claim: a defendant's minority shareholder status, coupled with ability to appoint a board member (who obviously would then sign public filings), is insufficient to establish control person liability.  Nor do Plaintiffs identify anything they have alleged that shows the Sequoia Defendants' control over Unity's "management and policies" or its "day-to-day affairs." *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996).

Plaintiffs' Section 20(a) claim against the Sequoia Defendants should be dismissed.

## I.       PLAINTIFFS FAIL TO ALLEGE A PRIMARY VIOLATION

As an initial matter, for the reasons stated in the Unity Defendants' Motion to Dismiss and Reply (which the Sequoia Defendants join), Plaintiffs have failed to allege a primary violation of the securities laws.  Plaintiffs' control person claim under Section 20(a) thus necessarily fails for this reason alone.  *See Webb v. Solarcity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018) (affirming dismissal of Section 20(a) claim where the plaintiff failed to state a claim of a primary violation); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1082 (N.D. Cal. 2010) (same).

---

[1]  Capitalized terms not otherwise defined have the meaning assigned to them in Sequoia Capital Operations, LLC and SC US SSF 2013 (TTGP), LLC's Motion to Dismiss Consolidated Amended Class Action Complaint ("Motion" or "Mot.") (ECF No. 102).  "Opposition" or "Opp." refers to Plaintiffs' Omnibus Brief in Opposition to Defendants' Motions to Dismiss (ECF No. 107).

## II.    PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING CONTROL PERSON LIABILITY

### A.    To State a Claim, Plaintiffs Must Allege the Sequoia Defendants Had Actual Power or Control over Unity's Day-to-Day Affairs, Management, and Policies

In addition to failing to plead a primary violation, Plaintiffs have failed to allege facts sufficient to support a control person claim against the Sequoia Defendants.[2]  Among other things, Plaintiffs have failed to allege facts that show that the Sequoia Defendants "exercised actual power or control" over Unity.  *Webb*, 884 F.3d at 858 (citation omitted); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (same); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) ("[A] plaintiff must . . . show that the defendant exercised actual power over the primary violator."); *Paracor*, 96 F.3d at 1163 (no control person claim where the defendant did not exercise "control over the 'management and policies'" of the company nor "direct its day-to-day affairs").[3]

Although Plaintiffs agree that they must prove the Sequoia Defendants "exercised actual power or control over the primary violator," (Opp. at 36), they fail to identify any facts that show

---

[2]    The Sequoia Defendants also join in the Section 20(a) arguments advanced in Silver Lake's Motion to Dismiss and Reply.

[3]    Plaintiffs attempt to distinguish *Paracor* by arguing that it was "decided at summary judgment." Opp. at 40.  But Plaintiffs do not dispute that *Paracor* sets forth the current Ninth Circuit standard. In this circuit, the standard for demonstrating "actual control" involves "scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."  96 F.3d at 1162; *see also Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1052-53 (N.D. Cal. 2019) ("In the Ninth Circuit, to exercise control over the primary violator, a Section 20(a) defendant must control 'management and policies' of the company or 'direct its day-to-day affairs.'"), *aff'd*, 994 F.3d 1102 (9th Cir. 2021), and *aff'd*, 847 F. App'x 368 (9th Cir. 2021). Plaintiffs have failed to satisfy this standard with respect to the Sequoia Defendants.

the Sequoia Defendants exercised "actual power or control" over Unity's day-to-day affairs or management and policies here.[4]

In their Opposition, Plaintiffs rely on cases analyzing the control of a company exerted by individual officers or directors—not by minority shareholders—to argue that control is sufficiently pleaded based on a defendant's "high level position[.]" Opp. at 36. But Plaintiffs do not allege the Sequoia Defendants had any "position" at all at Unity; the cases they cite involve officers or directors at a company, not outside, minority shareholders like the Sequoia Defendants. *See In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 WL 5031232, at *17 (C.D. Cal. July 13, 2015) (analyzing control person claims against the company's Chief Executive Officer, Chief Financial Officer, and Vice President of Business Development, respectively, and certain directors that were alleged to have had actual control over the Registration Statement they signed); *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987) (analyzing control person claims against corporate officers charged with the day-to-day operations of corporation), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc); *see also Arthur Child.'s Tr. v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993) (considering whether individual defendant who was a member of the "Management Committee" whose "decisions . . . were binding" on the joint venture and was a "vocal and active participant in the management of the venture" exercised sufficient control over management).

Plaintiffs also argue that the "control person" analysis is fact-intensive and imply that control person allegations cannot fall short at the pleading stage. Opp. at 37, 40. But courts have routinely

---

[4]   Plaintiffs cite two district court cases for the proposition that "only some indirect means of discipline or influence short of actual direction [is required] to hold a controlling person liable." Opp. at 36 (citing *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1032 (S.D. Cal. 2005); *see also Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV 15-8574 PSG (MRWx), 2017 WL 3187688, at *22 (C.D. Cal. Jan. 17, 2017)). Putting aside whether this is consistent with the Ninth Circuit standard, Plaintiffs have failed to allege that the Sequoia Defendants as minority shareholders had an "indirect means of discipline or influence" over Unity's business affairs.

dismissed control person claims at the pleading stage, where, as here plaintiffs failed to allege the required facts showing control on the part of outside, minority shareholders.  *See* Mot. at 5-7.

### B.  The Sequoia Defendants' Minority Ownership and Ability to Appoint a Board Member Is Insufficient to State a Claim

As set forth in the Motion, the Sequoia Defendants' alleged ownership of between 20.6% and 13.2% of Unity's stock at relevant times, and ability to propose one of eight to ten board members, is insufficient to establish control.  *See* Mot. at 5-6.  Plaintiffs' arguments to the contrary are undermined by the numerous cases cited in the Motion that dismissed similarly inadequate control person claims.  *See id.* at 5-6; *see, e.g.*, *Fouad v. Isilon Sys., Inc.*, No. C07-1764 MJP, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) ("Courts in this Circuit have held that a defendant's status as minority shareholder is insufficient to establish control person liability, even when combined with the power to appoint directors."); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) (same); *Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015) (dismissing 30% shareholder who was also board chairman).

Although Plaintiffs attempt to distinguish *Bao v. SolarCity Corp.* by arguing that there, "factual allegations as to [the defendant's] decision-making powers," were not pleaded (Opp. at 40), Plaintiffs fail to identify *any* allegations in the Amended Complaint that improve on what was alleged in *Bao* and would qualify as "factual allegations as to the [Sequoia Defendants'] decision-making powers" here.  Instead, the Opposition relies on exactly the type of allegations found insufficient in *Bao*.  *See* Opp. at 40 (relying on allegations that the Sequoia Defendants "had substantial holdings in Unity;" and had a "designee" on the Unity board of directors).  If anything, the allegations in *Bao* more strongly suggested control than the minimal allegations against the Sequoia Defendants here.  For example, in *Bao*, the individual defendant at issue held 30% ownership in the company, was chairman of the board, was related to the company's officers, and signed certain of the company's financial statements.  *Bao*, 2015 WL 1906105, at *5.

Similarly, Plaintiffs' attempt to distinguish *In re Gupta Corp.* by arguing that the control person claims there were dismissed because the plaintiffs did not plead any "specific circumstances

or instances indicative of control" does not distinguish *In re Gupta* at all.  Opp. at 40.  Plaintiffs do not explain how they have improved on the facts alleged in *In re Gupta*.  Instead, like the plaintiffs in *In re Gupta*, Plaintiffs here rely on the Sequoia Defendants' minority ownership interest and ability to appoint a board member, which the district court in *In re Gupta* explained is insufficient to allege defendants "exerted real control or influence over [the company]."  900 F. Supp. at 1243; *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99–00109 SBA, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (allegations that the defendant held 20% ownership in the company, the defendant's Chief Executive Officer served on the company's board, and the majority of the company's officers were former employees of the defendant, among other things, were still insufficient to plead control).

### C.    The Sequoia Defendants' Designated Director's Signature on Unity's 2021 Form 10-K Is Insufficient to Demonstrate Control on the Part of the Sequoia Defendants (Who Did Not Sign Anything)

Nor does the fact that the Sequoia Defendants' board designee signed the 2021 Form 10-K suffice to allege the Sequoia Defendants' control of Unity.  The Opposition contains a confused discussion that relies heavily on cases against individual officer and director defendants in trying to argue control on the part of the Sequoia Defendants.  But these cases about directors who signed public filings say nothing about control person claims against outside, minority shareholders that did not sign any public filings.  *See* Opp. at 39; *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 543 (S.D.N.Y. 2016) (Section 20(a) claims against individuals only); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) (same); *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 974-76 (D. Ariz. 2010) (Section 20(a) claims against individual officers and directors).

Plaintiffs also miscomprehend the Sequoia Defendants' citation to *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 263 (S.D.N.Y. 2020).  Although the court in *Weight Watchers* held that control person claims were sufficiently pleaded against certain individual officers and directors, the court held that the plaintiffs had *not* alleged the minority shareholder at issue in that case had "control over [the company's] day-to-day business."  *Id.*  In fact, the allegations

in *Weight Watchers* that a minority shareholder held, through an agreement, 46.3% of the company's shares and placed a member of the company's board who signed allegedly false and misleading filings were *not* sufficient to plead a control person claim against the minority shareholder. *Id.* at 264 ("[The director's] signature on the registration statement and other SEC filings *does not equate* to [the shareholder entity] signing the documents. . . . [the director was] not [signing] as the managing director of [the shareholder entity]." (emphasis added)).  Other courts in this district have held the same. *See Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 167708, at *13 (N.D. Cal. Jan. 17, 2017) (dismissing claim against third-party investor where appointed directors signed allegedly false financial statements); *In re Splash Tech. Holdings*, 2000 WL 1727405, at *16 (same).  Here, although the Sequoia Defendants' designated director signed Unity's 2021 Form 10-K, as a director of Unity, there are and can be no allegations the Sequoia Defendants themselves signed any public filings, helped prepare them, or had any control over Unity's SEC filings (or any other aspect of its business).

**D.      Plaintiffs Allege No Facts Showing Actual Power or Control over Unity on the Part of the Sequoia Defendants, and Plaintiffs' Citation to Inapposite Authorities Confirms They Have Not Stated a Claim**

Plaintiffs' remaining cases are distinguishable because, in each, far more was alleged to show "actual power or control" over the day-to-day operations and corporate actions of the primary violator than Plaintiffs can allege here.

In *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016), the defendant was a majority owner of the company, owning 70.3% of the company's shares, and appointed a majority of the company's board of directors.  Although the defendant eventually sold some shares and lost its status as majority shareholder during the class period, the plaintiffs asserted that the defendant "retained its control" of the company. *Id.* at 1048.  Among other things, the company itself stated that the shareholder "will continue to have significant influence over [the company's] affairs for the foreseeable future" and "will be able to control most matters requiring stockholder approval" and the plaintiffs alleged the shareholder "used its control . . . to cash out its investments in the Company at enormous profits"; in combination, such allegations were found

sufficient to allege control. *Id.* at 1048-49. No comparable allegations are or can be pleaded against the Sequoia Defendants.

In *In re UTStarcom, Inc. Securities Litigation*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009) the defendant was the company's "third largest customer and its largest shareholder." Nothing like that can be alleged against the Sequoia Defendants here.

In *In re American Apparel, Inc. Shareholder Litigation*, No. CV 10–06352 MMM (RCx), 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013), the defendant appointed two board seats, had a "significant lending relationship" with the company, and the company's Chief Executive Officer allegedly agreed that the defendant entity was "going to be involved in 'management decisions as far as strategic issues.'" *Id.* at *37; *see also Hayley v. Parker*, No. Civ. 01–0069, 2002 WL 925322, at *10 (C.D. Cal. Mar. 15, 2002) (plaintiffs alleged the control person defendant exercised control over certain individual defendants including its Chief Executive Officer and Chief Financial Officer that initiated allegedly false statements). Again, nothing like this is in the scant allegations against the Sequoia Defendants in the Amended Complaint.

The same is true of the cases Plaintiffs cite in support of their argument that "minority stock ownership combined with presence on the board of directors suffice for control." Each case cited for this proposition confirms such allegations do not suffice at all; in each, significantly more was alleged to support "control" than is alleged against the Sequoia Defendants. *See* Opp. at 39-41; *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 946-47 (S.D. Cal. 2019) (defendant held as much as 42.8% of the company and three board seats during class period); *Shepherd v. S3 Partners, LLC*, No. C-09-01405 RMW, 2011 WL 4831194, at *5 (N.D. Cal. Oct. 12, 2011) (three individual defendants were the "principals and primary decision-makers" and founders of the company, and defendant consulting group owned one-third of the company, among other things); *In re Allstate Life Ins. Co. Litig.*, No. CV-09-08162-PHX-GMS, 2013 WL 789106, at *4 (D. Ariz. Mar. 1, 2013) (individual defendant was chairman of company and the chairman position "came with significant supervisory responsibilities," including obligating the defendant to "supervise and control all of the business and affairs of the corporation and the performance by all of its other officers").

**E.      Plaintiffs Concede by Lack of Argument That the Sequoia Defendants Cannot Be Combined with Other Minority Investors for Control Person Purposes**

The Opposition does not include any argument that the Sequoia Defendants can be lumped together with other minority shareholders, such as Silver Lake, to create a "controlling" shareholder. As the Motion explained, the conclusory allegations in the Amended Complaint do not show that the Sequoia Defendants acted in concert with Silver Lake or other minority shareholders, even when read in the light most favorable to Plaintiffs. *See* Mot. at 8; *Shankar v. Zymergen Inc*., No. 21-CV-06028-VC, 2022 WL 17259057, at *3 (N.D. Cal. Nov. 29, 2022) (dismissing control person claims against minority shareholders where there were not "sufficient allegations to suggest that the [various] 'Controlling Stockholders' acted in concert").

## III.      CONCLUSION

For the foregoing reasons, the Sequoia Defendants respectfully request that the Court grant their Motion to Dismiss with prejudice.

DATED:  September 1, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____*/s/ Harry A. Olivar, Jr.*_____
    HARRY A. OLIVAR, JR.

*Attorneys for Defendants Sequoia Capital Operations, LLC and SC US SSF 2013 (TTGP), LLC*