JORDAN ETH (SBN 121617)
JEth@mofo.com
CHRISTIN HILL (SBN 247522)
CHill@mofo.com
SUSANA S. HERRERA (SBN 348147)
SHerrera@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-1905
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendants Unity Software Inc., John S. Riccitiello, Luis Felipe Visoso, and Ingrid Lestiyo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re UNITY SOFTWARE INC., SECURITIES LITIGATION | Case No.    5:22-cv-03962-EJD<br><br>**UNITY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:       September 12, 2024<br>Time:       9:00 a.m.<br>Judge:      Hon. Edward J. Davila<br>Dept.:      Courtroom 4 – 5th Floor<br><br>Second Amended Complaint Filed: April 12, 2024<br>Trial Date: None yet set |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    PLAINTIFFS FAIL TO PLEAD MATERIAL FALSITY ..................................... 1

    A.    The Opposition Confirms that the SAC Adds No Viable Falsity Allegations to Support Their "Known Technical Flaws" Theory ....................................................... 2

    B.    The Opposition Confirms that The Challenged Statements Are Not "Necessarily Inconsistent" with the Existence of Technical Flaws ....................................... 3

    C.    Statements of Corporate Optimism Are Not Actionable ................................ 8

III.   PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ...................... 9

    A.    Defendants' Access to Information Does Not Support Scienter .................................. 9

    B.    Defendants' Statements Do Not Support Scienter ......................................... 11

    C.    The CW Allegations Do Not Support Scienter ............................................ 12

    D.    Individual Defendants' Stock Sales Do Not Support Scienter.................................... 12

    E.    Executive Departures Do Not Support Scienter.............................................. 14

    F.    The Core Operations Inference Does Not Apply ............................................ 14

    G.    Holistically Considered, Plaintiffs' Theory is Not Compelling................................. 15

IV.    PLAINTIFFS FAIL TO PLEAD CONTROL-PERSON CLAIMS.................................... 15

V.     CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atossa Genetics, Inc. Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017)...................................................................................... 5

*In re Bare Escentuals, Inc. Sec. Litig.*,
    745 F. Supp. 2d 1052 (N.D. Cal. 2010) ...................................................................... 2

*In re BioMarin Pharm. Sec. Litig.*
    No. 3:20-cv-06719-WHO, 2022 WL 164299 (N.D. Cal. Jan. 6, 2022)....................... 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017)...................................................................................... 14

*Curry v. Yelp Inc.*,
    No. 14-cv-03547–JST, 2015 WL 7454137 (N.D. Cal. Nov. 24, 2015) ......... 3, 7, 15

*In re Daou Sys., Inc. Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005)...................................................................................... 4

*In re Downey Sec. Litig.*,
    No. CV08-3261-JFW (RZX), 2009 WL 736802 (C.D. Cal. Mar. 18, 2009)............. 3

*In re Eventbrite, Inc. Sec. Litig.*,
    No.18-CV-02019-EJD, 2020 WL 2042078 (N.D. Cal. April 28, 2020).................... 4

*Homyk v. ChemoCentryx, Inc.*,
    No. 21-cv-03343-JST, 2023 WL 3579440 (N.D. Cal. Feb. 23, 2023)................ 8, 11

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002)................................................................................... 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008)................................................................................... 12

*In re Netflix, Inc. Sec. Litig.*,
    No. C04-2978 FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005) ........................ 7

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
    No.15-cv-02938-HSG, 2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ................... 15

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*
    No.15-cv-02938-HSG, 2018 WL 3126393 (N.D. Cal. June 26, 2018)..................... 15

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004).................................................................................... 10, 13

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ........................................................................................ 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  No. 10-CV-03451-LHK, 2012 WL 1868874 (N.D. Cal. May 22, 2012) ............................ 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)................................................................................... 14, 15

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)...................................................................................... 8, 11

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014)............................................................................................ 11

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012)............................................................................................. 4

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016)............................................................................................. 5

*In re Silver Lake Group, LLC Sec. Litig.*,
  No. 23-15822, 2024 WL 3515766 (9th Cir. July 24, 2024)................................................ 12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) .......................................................................................................... 9

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012)...................................................................................... 11, 12

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ............................................................................................. 4

*Weston v. DocuSign, Inc.*,
  669 F. Supp. 3d 849 (N.D. Cal. 2023) ............................................................................. 13

*Wozniak v. Align Tech., Inc.*,
  850 F. Supp. 2d 1029 (N.D. Cal. 2012) ............................................................................ 8

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009).................................................................................... 14, 15

**Statutes**

15 U.S.C. § 78j(b) (Securities Exchange Act of 1934 Section 10(b)) ........................................ 15

15 U.S.C. § 78t(a) (Securities Exchange Act of 1934 Section 20(a))........................................ 15

15 U.S.C. § 78u-4(b)(2) ............................................................................................................ 9

iii

## I.    INTRODUCTION[1]

In dismissing the prior complaint, the Court was clear: Plaintiffs "failed to satisfy the 'exacting' pleading requirement imposed by the PSLRA necessitating 'specific' and 'contemporaneous' facts indicating when and how Audience Pinpointer experienced the issues which Lead Plaintiffs allege made Defendants' statements false." (Order at 16 (citations omitted).) As the Motion demonstrated, the Second Amended Complaint ("SAC") suffers from the same fatal defect, as Plaintiffs continue to rely primarily on inadequate confidential witness ("CW") allegations—most of which have already been considered and found lacking by the Court. The handful of new allegations do not come close to meeting the Court's demand for "specific" and "contemporaneous" facts to support Plaintiffs' theory. Instead of addressing this fundamental flaw, the Opposition largely ignores the Motion's arguments and merely copies and pastes the same arguments advanced in the last round of motion to dismiss briefing. These arguments fare no better the second time around.

The SAC should be dismissed because it adds no viable falsity allegations and still fails to plead a strong inference of scienter. Moreover, dismissal this time should be with prejudice. Failure to correct the deficiencies identified by the Court demonstrates that the Plaintiffs have no additional facts to plead, and that further amendment would be futile.

## II.    PLAINTIFFS FAIL TO PLEAD MATERIAL FALSITY

The Opposition cannot overcome the Motion's showing that the SAC, like the dismissed Consolidated Complaint, fails to plead with particularity facts to support Plaintiffs' core theory that Unity concealed known technical problems with Audience Pinpointer throughout the Class Period. Having failed to make this threshold showing, the SAC fails to plead the falsity of any

---

[1] The Unity Defendants submit this brief in further support of their Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 133, the "Motion" or "Mot."), and in reply to Lead Plaintiffs' Omnibus Brief in Opposition to Defendants' Motions to Dismiss (ECF No. 139, the "Opposition" or "Opp."). Defendants Sequoia and Silver Lake submit separate briefs. Abbreviations and defined terms are the same as in the Unity Defendants' Motion.

1

Challenged Statement.

### A.    The Opposition Confirms that the SAC Adds No Viable Falsity Allegations to Support Their "Known Technical Flaws" Theory

As the Motion showed, the SAC adds only four new factual allegations, none of which support Plaintiffs' falsity theory. The Opposition largely ignores the Motion's arguments regarding the new allegations, thereby confirming that the SAC fails to plead falsity.

First, the SAC adds new allegations that CW-2 recalled "complaints regarding Audience Pinpointer" that began in April 2021 and continued "in varying increments" through August 2022, and also recalled emails and meetings with Defendant Lestiyo in which customer complaints were discussed. (¶¶ 109-113, 115-117.) As the Motion showed, these allegations are no different from the vague CW allegations the Court already considered and rejected in dismissing the Consolidated Complaint. (Mot. at 5-8.) CW-2 still does not explain the nature of the alleged customer complaints, which customers complained, when they complained, or the number of complaints. And CW-2 still does not point to a single customer that terminated, or even reduced, its business with Unity due to the alleged "problems" with Audience Pinpointer. Such vague allegations cannot support falsity. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (N.D. Cal. 2010) (finding no falsity where CWs failed to offer "any specifics that would enable the court to ascertain whether [sales] performance as a whole was so unsuccessful as to support plaintiffs' claim"). The Opposition ignores all of these arguments, and makes no effort to rehabilitate CW-2.

Second, the SAC adds two new confidential witnesses (CW-6 and CW-7) who recalled company-wide meetings in the Summer of 2022 (after the Class Period ended on May 10, 2022) regarding "problems with Audience Pinpointer." (¶¶ 88-89, 140-144, 274.) As the Motion showed, these ***post***-Class Period allegations cannot support falsity ***during*** the Class Period. (Mot. at 6-8, 24.) Indeed, while the Opposition argues that CW-6's observations apply to the "entire Class Period" (Opp. at 16), the SAC actually alleges that CW-6 "was aware of the problems on the ads side during his time as Senior Program Manager," (¶ 141), which was "from March 2022 through February 2024" (¶ 88)—or, the last three months of the Class Period. Regardless, CW-

2

6's vague allegations of "problems with Audience Pinpointer" cannot support falsity. The SAC does not explain what these "problems" were. The Opposition does not even mention CW-7. Moreover, as the Motion showed, reports of post-Class Period meetings regarding challenges with Audience Pinpointer are entirely consistent with the Company's May 10, 2022 statement, publicly announcing recent technical problems with Audience Pinpointer. (Mot. at 7.) That the Company followed this public announcement with internal meetings discussing this issue is not remotely surprising, nor is it indicative of fraud. The Opposition offers no response.

Third, the SAC adds allegations that two of the Individual Defendants left Unity more than a year after the Class Period. (¶¶ 18, 27, 29, 228-229.) As the Motion showed, such departures are not indicative of fraud (Mot. at 24), and certainly do not support the theory that there were "known technical flaws" during the Class Period. The SAC does not even attempt to allege any facts that could link the departures to the alleged technical challenges. *See In re Downey Sec. Litig.*, 2009 WL 736802, at *11 (C.D. Cal. Mar. 18, 2009) (resignations must be "connected to [ ] purported wrongdoing or fraudulent activity.")

Finally, the SAC adds allegations that Defendant Riccitiello did an interview in July 2022 (again, after the Class Period) where he allegedly disparaged videogame developers. (¶ 223.) As the Motion showed, Riccitiello makes no reference to Audience Pinpointer in the interview, and the SAC makes no attempt to connect the interview to the alleged technical challenges. (Mot. at 7, n. 4, citing ¶ 223; Ex. 10). Again, the Opposition offers no response.

Beyond these four deficient allegations, Plaintiffs offer nothing new to support their "technical defects" theory. Thus, Plaintiffs have failed to plead falsity for the same reasons discussed in the Order. (Order at 16.) The Court may dismiss the SAC on this basis alone. *See Curry v. Yelp Inc.*, 2015 WL 7454137, at *7, *14 (N.D. Cal. Nov. 24, 2015) (dismissing with prejudice where new allegations "d[id] not affect the Court's previous analysis").

**B.      The Opposition Confirms that The Challenged Statements Are Not "Necessarily Inconsistent" with the Existence of Technical Flaws**

Plaintiffs also, once again, fail to show that any particular Challenged Statement was false or misleading. The Opposition confirms that Plaintiffs fail to allege that any Challenged

3

Statement, at the time it was made, is "necessarily inconsistent" with the alleged facts. As explained in the Motion, Plaintiffs must plead "specific facts indicating why the statements at issue were false." (Mot. at 4 (citing *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *14 (N.D. Cal. May 29, 2020) (quoting *Metzler Inv. GMBH v*. Corinthian Colleges, Inc., 540 F.3d 1049, 1070 (9th Cir. 2008))).) As the Court explained in dismissing the prior complaint, this requires pleading "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality." (Order at 14 (quoting *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc*., 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016)).) The particularized facts must be "necessarily inconsistent" with the Challenged Statements (Order at 14 (quoting *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003)).) Plaintiffs do not address, let alone distinguish, any of these cases, or make any effort to satisfy this standard.

Indeed, the Opposition does not even reference 31 of the 40 statements, implicitly abandoning any argument that the SAC satisfies the pleading requirements with respect to these Challenged Statements. Specifically, the Opposition makes no effort to rehabilitate Statements 2, 4-9, 11-13, 15, 16, 18, 19, 21- 26, 29-33, and 35-40. Instead, the Opposition (and the Plaintiffs' Statements Chart), merely repeats the same conclusion from the SAC that all of the Challenged Statements are false and misleading because they omit the alleged technical defects. (Opp. at 13-19; ECF No. 139-2.) This is not enough. *See In re Eventbrite, Inc. Sec. Litig*., 2020 WL 2042078, at *10-15 (N.D. Cal. April 28, 2020) (examining each statement in turn and finding that plaintiffs failed to allege that each statement was materially false or misleading).

Nor may Plaintiffs bypass pleading a material misstatement by relying on an "omission" theory. Plaintiffs acknowledge that liability for alleged omissions only arises when statements affirmatively create an "impression of a state of affairs that differ[s] in a material way from the one that actually exist[s]." (Opp. at 18.) In other words, the omitted information must materially contradict an affirmative statement. *See In re Rigel Pharms., Inc. Sec. Litig*., 697 F.3d 869, 881 n.10 (9th Cir. 2012); *Weston Fam. P'ship LLLP v. Twitter, Inc.,* 29 F.4th 611, 619-620 (9th Cir. 2022). Plaintiffs' own authority demonstrates that this is a high standard. In *In re Daou Sys., Inc. Sec. Litig.,* 411 F.3d 1006, 1020 (9th Cir. 2005), defendants represented that attrition of technical

4

employees was only 6.8% when, in fact, employee turnover exceeded 40%. In *Schueneman v. Arena Pharms., Inc.,* 840 F.3d 698, 707-08 (9th Cir. 2016), defendants stated that "all" animal studies supported the safety of a new drug, when a rat study showed that the drug was potentially carcinogenic. And in *In re Atossa Genetics, Inc. Sec. Litig.,* 868 F.3d 784, 797 (9th Cir. 2017), a statement that the FDA had raised minor concerns "among other matters" was misleading when the "other matters" omitted made up the "balance of the FDA's alleged serious concerns." These cases show what is missing here. As described below, Plaintiffs fail to show that the alleged omission renders any of the Challenged Statements misleading, or that any Challenged Statement is otherwise inconsistent with or contradicted by the omitted information.

**Statements about Audience Pinpointer were not misleading.** (Statements 5, 17, 22, 31.)[2] Plaintiffs respond to only one statement about Audience Pinpointer—Statement 17—which describes Audience Pinpointer's capabilities. The Opposition argues that this statement is misleading, "even if technically true," because it "omitted any mention of the failures of Audience Pinpointer that prompted 'thousands' (¶ 119) of customer complaints to flood Unity." (Opp. at 17.) Again, as described in Section II.A above, the SAC still does not allege that even one of the "thousands" of customer complaints referenced by CW-1 cited technical problems with Audience Pinpointer, nor do Plaintiffs provide any baseline from which to measure the significance of "thousands" of complaints.

**Unity's general business statements were not misleading.** (Statements 1, 4, 7, 9-13, 15, 19, 23, 25, 28, 30, 33-40.) Plaintiffs respond to only four statements about Unity's business—Statements 1, 10, 28, and 34. In doing so, the Opposition relies on a flawed revenue analysis and asks the Court to infer, contrary to Unity's undisputed financial statements, that the Company was

---

[2] The Opposition argues that references to Unity's "contextual model" and "contextual approach" are references to Audience Pinpointer. (*See* Opp. at 16-17, 20-21,, 26-27 (Statements 1, 20, 34).) There is nothing in the SAC to show that these terms are interchangeable. Regardless, Plaintiffs cannot establish that these statements were false or misleading when made (Mot. at 10-13), or amount to more than non-actionable corporate optimism (*Id.* at 15).

5

struggling. (Opp. at 19-20.) Such an inference is not supported.

For one, the Opposition mischaracterizes the SAC's allegations. The Opposition argues that "Unity's quarter-over-quarter revenue had been falling for four quarters and was negative" when Statement 34 was made. (Opp. at 21.) The SAC contains no such allegation. Instead, the SAC alleges that Operate's quarter-over-quarter revenue growth rate slowed beginning in Q3 2021 (¶ 237). But slower growth is still growth, and Plaintiffs' simplistic analysis fails to account for myriad other factors that could affect Operate's quarterly revenue growth beyond Audience Pinpointer. Further, Plaintiffs do not contest, and therefore concede, that a quarter-over-quarter analysis (as opposed to year-over-year) is out-of-step with standard financial reporting and fails to account for seasonality. (*See* Mot. at 22-23; *see, e.g.,* Ex. 2 at 1 (comparing Q2 2021 revenue to Q2 2020 revenue).

Alternatively, Plaintiffs argue that Unity's reported revenue, while accurate, is nevertheless misleading because Unity "went on an acquisition spree during the Class Period," obscuring losses the Company was experiencing as a result of Audience Pinpointer. (Opp. at 19.) This conclusion is not supported by the SAC. Only one of the seven acquisitions during the Class Period—OTO, a voice recognition technology company that was absorbed into Unity's text and chat platforms—is alleged to have been integrated into the Operate segment. (¶ 149.) Moreover, Plaintiffs do not allege that OTO provided any revenue—let alone significant revenue—for Unity.

**Statements about Apple's IDFA privacy changes were not misleading.** (Statements 6, 14, 18, 20, 24, 26, 27.) Plaintiffs respond to only three statements about Apple's IDFA privacy changes—Statements 14, 20, and 27. As detailed in the Unity Defendants' Motion, allegations in the SAC do not contradict—and, in fact, support—the Challenged Statements regarding Apple's IDFA privacy changes. (Mot. at 12-13.) Plaintiffs offer no response. Instead, Plaintiffs argue that these statements are false because (1) customers had been complaining "about the ineffectiveness of Unity's ad placement post-IDFA changes" and (2) "Unity's quarter-over- quarter revenue had been falling." (Opp. at 20-21.) As to the first point, the SAC does not allege that even one customer complaint referenced the effectiveness of Unity's ad placement, nor would any such complaints be necessarily inconsistent with the Challenged Statements regarding Unity's position

6

following Apple's IDFA changes. In any event, customer complaints (like technical problems for a software company) are entirely routine and not indicative of falsity. *See In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005) ("[E]very large company can expect to have some customer complaints, and the existence of such complaints fails to render Netflix's statements about its service false."). As to the quarter-over-quarter revenue, Plaintiffs again misrepresent Unity's financial results (*see* Mot. at 22-23), and ignore the impact of seasonality on quarterly results. Plaintiffs additionally challenged these statements for leaving analysts with the impression that Unity had a "competitive advantage" following Apple's IDFA changes. (Opp. at 24.) But Plaintiffs fail to allege any facts regarding Unity's competitive standing or how any such impression would be false or misleading.

**Statements about Unity's relationship with its customers were not misleading.** (Statements 2, 3, 8, 16, 21, 29, 32.) Plaintiffs respond to only one statement about Unity's relationship with its customers—Statement 3. Plaintiffs do not dispute that this statement (along with Statement 21) merely quotes real customer feedback. (Mot. at 14.) Instead, Plaintiffs assert that this statement was nevertheless misleading because Unity was experiencing "a flood of customer complaints about Audience Pinpointer." (Opp. at 21.) But, again, the SAC alleges no such thing. The only new allegations regarding customer complaints are CW-2's vague allegations that "complaints regarding Audience Pinpointer" began in April 2021 and continued "in varying increments" through August 2022. (¶ 109.) As the Motion showed, the SAC fails to explain how vague allegations of feedback from anonymous Unity customers—even a significant number of Unity customers—are inconsistent with quoting positive feedback from one customer. Mot. at 13-14; *see also Curry*, 2015 WL 7454137, at *7 (rejecting argument that "customer complaints alleging circumstances that are contrary to defendant's representations independently suffice to establish the falsity of those representations"). Again, customers complain. Especially about new technology. *See Netflix*, 2005 WL 1562858, at *7. Nor does the Opposition provide any response to the cases cited by Defendants that are directly on point. (Mot. at 13-14 (collecting cases).) As the Court already found: "[v]ague complaints from an unspecified number of unknown customers that a product was not working as intended at some unspecified time does not

7

show that any Challenged Statements was false when made." (Order at 16.) The SAC alleges nothing new that can undermine this ruling.

### C.      Statements of Corporate Optimism Are Not Actionable

Additionally, and independently, most of the Challenged Statements are non-actionable vague statements of corporate optimism. (Mot. at 15.) Plaintiffs argue that the Challenged Statements are nevertheless actionable because they contain "factual statements" about "Audience Pinpointer's performance." (Opp. at 20.) The cases Plaintiffs cite show what is missing here. In *In re Quality Sys., Inc. Sec. Litig*., the court found actionable, statements that provided "concrete descriptions" of the company's sales pipeline, including "the number and type of prospective sales." 865 F.3d 1130, 1144 (9th Cir. 2017). In *In re BioMarin Pharm. Sec. Litig*., the court found that statements touting the company's relationship with the FDA were actionable where they were "undergirded by factual assertions such as timelines for approval and inspections." 2022 WL 164299, at *12 (N.D. Cal. Jan. 6, 2022). And in *Homyk v. ChemoCentryx, Inc*., the court held "concrete . . . factual statements" that the company's product was "numerically superior to the active comparator" to be actionable, while finding "vague positive language" that the company's drug trial was "highly successful" not actionable. 2023 WL 3579440, at *16 (N.D. Cal. Feb. 23, 2023).

By contrast, the Challenged Statements here—including the examples cited in the Opposition (Statements 1, 3, 14, 20, 27, 34)—provide no concrete descriptions. For one, only a handful of statements even mention Audience Pinpointer (Statements 17, 22, and 31), and they merely describe the tool (Statement 17) or its strong performance (Statements 22 and 31). Numerous courts have found similar statements non-actionable. (*See* Mot. at 15-16 (collecting cases).) The Opposition's attempt to distinguish the Motion's case law by focusing on irrelevant facts is unavailing. (Opp. at 20-21.) For example, Plaintiffs attempt to distinguish *Wozniak v. Align Tech., Inc*., 850 F. Supp. 2d 1029, 1036-37 (N.D. Cal. 2012), because it involved a "pilot launch." (*Id.* at 21.) This distinction is meaningless. *Wozniak* did not turn on the scale of the product release in finding statements that "we're getting really great feedback" non-actionable.

Rather, the decision turned on the nature of the statements themselves. (*Id* at 1036-37.)[3] This provides an additional, independent ground for dismissing claims based on these statements.

**III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER**

The Opposition also confirms Plaintiffs have not pled the "strong inference" of scienter for each Unity Defendant required by the Reform Act. 15 U.S.C. § 78u-4(b)(2). The Opposition fails to address, much less refute, the majority of the Unity Defendants' scienter arguments. (Mot. at 17-24.) Instead, Plaintiffs repeat the conclusory allegations of the SAC while relying on conjecture and impermissible inferences. The SAC is devoid of witnesses, internal reports, concessions or any other indicial of actual knowledge. Whether taken individually or together, Plaintiffs' scienter allegations do not raise a strong inference that any Defendant made any of the Challenged Statements with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 319 (2007) (citation omitted).

**A.    Defendants' Access to Information Does Not Support Scienter**

The thrust of Plaintiffs' scienter argument is that the Individual Defendants must have known about the alleged "massive" and "serious" technical flaws because they had "access to the undisclosed information." (Opp. at 25-26.) The SAC fails, however, to allege particularized facts that could support an inference that any Individual Defendant had access to information that disclosed the "serious known technical flaws." Specifically, Plaintiffs argue that Lestiyo "participated in meetings that specifically discussed the ads business"; Defendant Visoso "was part of a task force tasked with responding to the loss of IDFA data"; and Defendant Riccitiello

---

[3] Additionally, two of the Challenged Statements (Statements 10 and 28) are protected by the Reform Act's Safe Harbor. (Mot. at 16, n. 6.) Plaintiffs argue that these statements are (1) "mixed statements" that include "embedded representations of [ ] fact" and (2) not accompanied by meaningful cautionary language." (Opp. at 22-23.) To the extent these statements are found to be "mixed statements," any representations of fact are not false for the reasons described in Section II.B. above. Further, the cautionary language here is tailored to the risks underpinning these statements—i.e., risks regarding revenue expectations.

9

"frequently made statements about Audience Pinpointer." (*Id.*) But Plaintiffs do not plead what information was discussed at these meetings or within the task force, let alone particularized facts indicating that these meetings covered the existence of "serious known technical flaws." Plaintiffs therefore ask the Court to infer not only that the Individual Defendants had the requisite state of mind based on "access to undisclosed information," but also that the undisclosed information revealed that the Challenged Statements were false. Such speculation falls far short of the strict pleading standard and has been repeatedly and consistently rejected. *See, e.g., Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1036 (9th Cir. 2002) (finding no scienter where "plaintiffs merely assert in conclusory terms that the defendants had access to internal data" without "identify[ing] any internal reports . . . much less plead, in any detail, the contents of any such report or the purported data."); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012) ("The 'particularity' requirement of the PSLRA cannot be satisfied by a mere conclusory assertion that Defendants had 'access to, and use of the information[.]'").

The cases Plaintiffs cite in their Opposition only underscore this deficiency. (*See* Opp. at 25-26.) Plaintiffs rely heavily on *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004). In that case, the plaintiffs directly tied the statements at issue— forecasts about Oracle's third-quarter financial performance—to specific, identifiable underlying information known to the defendants that suggested that their statements were untrue when made. The court thus found a strong inference of scienter based on an overall record that included "specific allegations regarding large portions of Oracle's sales data," suspicious stock sales, improper revenue accounting records, and the fact that the CEO was directly and heavily involved in many of the deals whose disappearance accounted for the eventual third-quarter shortfall. *Nursing Home*, 380 F.3d at 1231-33, 1235. In so ruling, the court noted that "a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability." *Id*. at 1230-31 (citation omitted). Here, Plaintiffs fail to allege the contents of any report or data allegedly provided to the Individual Defendants—let alone data that contradicts the Challenged Statements.

10

Plaintiffs' reliance on *Quality Systems* is also misplaced. (Opp. at 25.) In that case, the defendants made several bullish statements that the company's "pipeline continue[d] to build to record levels" and "ke[pt] growing." *Quality Systems*, 865 F.3d at 1143. To establish scienter, the plaintiffs pleaded particularized allegations that the defendants "had access to and used reports documenting in real time the decline in sales during the Class Period"—the very information that contradicted the defendants' statements about sales. *Id*. at 1145. Again, not so here. Plaintiffs do not plead particularized facts establishing that any records contained information about purported massive technical flaws, let alone explain how the Individual Defendants were aware of information that contradicted the Challenged Statements.

## B.    Defendants' Statements Do Not Support Scienter

Plaintiffs' argument that Defendants' statements about Audience Pinpointer support an inference of scienter (Opp. at 26-28) also fails. There are no allegations that the Individual Defendants discussed any problems with the tool before May 2022. And Plaintiffs never explain why speaking about Audience Pinpointer suggests that the Unity Defendants were aware of "massive" or "serious" technical flaws, or otherwise supports a strong inference of such intent.

In any event, Plaintiffs' authority shows what is missing here. In *Reese v. Malone*, defendants' assertion that they were unaware of an issue was "directly contradicted by the fact that [they] specifically addressed it" on other occasions. 747 F.3d 557, 572 (9th Cir. 2014). There is no such direct contradiction here. In *ChemoCentryx*, the complaint alleged that the defendant CEO was directly informed of contradictory information by senior employees at the company and was thus "personally aware" that his statements were misleading. 2023 WL 3579440, at *18. Here, there are no particularized allegations that the Individual Defendants were "personally aware" of the alleged "massive" technical flaws. Finally, *In re VeriFone Holdings, Inc. Sec. Litig.* involved an earnings restatement following three consecutive quarters where internal reports showed that the company had fallen short of earnings projections. 704 F.3d 694, 698 (9th Cir. 2012). The Ninth Circuit affirmed a strong inference of scienter on the part of an individual defendant who was aware of the internal reports, deemed them "unacceptable," and directed accounting personnel to make unreasonable adjustments that brought earnings into line with

11

expectations. *Id.* at 708. Again, there are no comparable allegations here.

The Opposition's assertion that Defendants made statements in response to analysts' questions about Audience Pinpointer is baseless. (Opp. at 27-28.) The SAC does not allege that any analyst inquired about Audience Pinpointer before the May 2022 announcement.

### C.    The CW Allegations Do Not Support Scienter

The Opposition does not challenge the Unity Defendants' summary of the CW allegations regarding scienter (Mot. at 17-19), nor attempt to explain how these limited CW allegations could establish scienter. Instead, Plaintiffs persist in debating hearsay rules. (Opp. at 28-29.) The problem with the CW allegations is not ***just*** that they are hearsay—although that is problematic enough. *See In re Silver Lake Group, LLC Sec. Litig.*, 2024 WL 3515766, at *10 (9th Cir. July 24, 2024) (affirming that hearsay from confidential witnesses who lack personal knowledge is "not reliable under [Ninth Circuit] precedent"). The issue is that the CW allegations—on their face— do not support what Plaintiffs allege. At this point, Plaintiffs have had ***two years*** to investigate allegations of "serious known technical flaws." Yet they have been unable to find even one witness who could speak to this core allegation ***during the Class Period***. As the Motion showed, none of the new allegations set forth in the SAC even come close. The only inference, therefore, is that the Individual Defendants were not aware of the alleged "serious" "technical flaws" during the Class Period.

### D.    Individual Defendants' Stock Sales Do Not Support Scienter

The Opposition also confirms that Plaintiffs failed to allege suspicious stock sales.

***Riccitiello's stock sales were not suspicious***. Rather than respond to the legal analysis raised in the Unity Defendants' Motion, Plaintiffs assert that Riccitiello sold 38% of his shares for an alleged $232 million gain and hope that the Court will balk at that number. (Opp. at 31-32.) But the Ninth Circuit is clear: To give rise to a strong inference of scienter, sales must be "dramatically out of line with prior trading practices" and "at times calculated to maximize" the defendant's benefit. *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1066-67 (9th Cir. 2008) (citation omitted). Plaintiffs do not make this showing. Additionally, as the Motion showed, Plaintiffs' calculations overstate the percentage of Riccitiello's shares sold. (Mot. at 21.)

12

In any event, the Opposition does not challenge the Motion's showing that, under either calculation, courts in the Ninth Circuit typically require larger percentages of sales, especially when considered over a 12-month Class Period, and deviation from prior sales practices. (*Id.*) Instead, Plaintiffs rely on cases that involved sales made during a much narrower window of time and deviated from prior practices. (Opp. at 32-33.) For example, *Nursing Home* involved the sale of $900 million worth of stock ***within a nine-day period*** when the defendant had not sold any stock for the prior five years. 380 F.3d at 1232. Similarly, in *Weston v. DocuSign, Inc.*, one defendant sold 36% of her shares in a ***single day*** after making no sales in the prior three years. 669 F. Supp. 3d 849, 885 (N.D. Cal. 2023). Here, Plaintiffs allege that Riccitiello "sold frequently and in large amounts in the months ***leading up to the Class Period*** (¶ 260 (emphasis added)), and made multiple trades over the course of the year-long Class Period. (Opp. at 32; Ex. 11.) That Riccitiello made money—even a lot of money—over the course of the year-long Class Period from the IPO of a company he led for six years prior does not support scienter.

Finally, Riccitiello's sales occurred pursuant to a 10b5-1 plan. Plaintiffs contend that these plans cannot "nullify" scienter where (1) the plans themselves were entered into at suspicious times, or (2) defendants delayed the release of negative news to circumvent their plans. (Opp. at 33-34.) But Plaintiffs allege no facts to support either inference here.

**Visoso's stock sales were not suspicious**. Plaintiffs allege only that Visoso "sold zero shares of stock" before the Class Period. (Opp. at 32.) But Plaintiffs do not dispute that Visoso sold more shares in the 12 months after the Class Period than he did during it, or that, of the only two sales Visoso made during the Class Period, one was made "automatically" to cover tax liabilities. (Mot. at 22.) Visoso's only other sale was at $124 per share, far from the stock's peak at $180 per share, and accounted for only 7% of his total holdings. (Ex. 13 at 2.)

**Lestiyo's stock sales were not suspicious.** Lestiyo's sales (under either Plaintiffs' or Defendants' calculation) were not large enough, by either amount or percentage, to establish scienter. (Mot. at 22.) Further, these sales were made regularly over a four-month period (see Ex. 12), and most sales were made pursuant to a 10b5-1 plan (¶ 267 n. 52). Additionally, Plaintiffs do not dispute that several of Lestiyo's stock sales were conducted automatically to address tax

13

obligations, and as such, do not give rise to any inference of scienter. (Mot. at 22.)

### E.    Executive Departures Do Not Support Scienter

The Opposition also argues that Riccitiello's "abrupt retirement" as well as Lestiyo's "demotion" and subsequent departure support an inference of scienter. (Opp. at 36). But, "bare fact[s]" of an executive's resignation, cannot support allegations of scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). Rather, controlling law requires Plaintiffs to plead specific facts showing that the departures resulted from the alleged wrongdoing. *See In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1062–63 (9th Cir. 2014) (finding that executive departures did not add to the inference of scienter because "Plaintiffs fail[ed] to provide any facts to connect [] departures with the problems at issue in this lawsuit".) They fail to do so here. Moreover, the fact that Riccitiello and Lestiyo remained at Unity for more than a year following the Company's May 10, 2022 announcement (¶¶ 27, 229), further diminishes any inference of scienter. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* 856 F.3d 605, 622 (9th Cir. 2017) (finding that any inference of scienter was diminished because executive remained employed for an additional six months after the alleged corrective disclosure).

### F.    The Core Operations Inference Does Not Apply

The Opposition contends that the core operations inference applies because Audience Pinpointer was "important" to Unity. (Opp. at 29-31.) Saying something is "important" does not give Plaintiffs a free pass. Otherwise, scienter could be inferred anytime an alleged fraud is related to a significant component of any business, as is almost always the case. Rather, the theory applies only in the "rare circumstance" where it would be "absurd to suggest" that the defendant did not know that fundamental fact. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014). This is not that rare circumstance.

The inference Plaintiffs request cannot be reconciled with Ninth Circuit authority, which requires Plaintiffs to produce either specific admissions by corporate executives of detailed involvement in the minutia of a company's operations, or specific allegations about management's exposure to factual information. (Mot. at 23-24 (citing *Intuitive Surgical,* 759 F.3d at 1062).) Plaintiffs do not dispute that none of the Individual Defendants made specific

14

admissions regarding their involvement with Audience Pinpointer. Nor, as shown above, are there particularized allegations that the Individual Defendants were personally aware of the alleged technical flaws. Instead, Plaintiffs try to conflate various Unity operations to bolster the importance of Audience Pinpointer. Plaintiffs allege that Operate—the segment in which the Audience Pinpointer tool sat—accounted for 65% of Unity's revenue and that "advertising revenue was the largest piece of the Company's Operate business." (¶¶ 3, 44.) That gets Plaintiffs nowhere. These bootstrapped facts allege nothing about the significance of Audience Pinpointer as a product, nor would any such allegation, without more, be sufficient to plead scienter through a core operations theory. *See Intuitive Surgical,* 759 F.3d at 1062 (no core operations inference regarding flagship product); *Norfolk Cnty. Ret. Sys. v. Solazyme*, Inc., 2018 WL 3126393, at *9 (N.D. Cal. June 26, 2018) (same regarding "central cornerstone" of business strategy).

### G.    Holistically Considered, Plaintiffs' Theory is Not Compelling

For the reasons described above, the SAC fails to support any inference of scienter. Additionally, Plaintiffs provide no response to the nonculpable inferences described in the Motion: Unity experienced unexpected technical challenges in the weeks—not the year—leading up to its Q1 2022 earnings release, as supported by Plaintiffs' own CW who alleges that the "biggest fire Unity had ever faced" occurred in May 2022 (¶ 136), and Unity's May 10 announcement. (Ex. 8). The market was disappointed by the May 10 announcement, and the stock price dropped. This is not fraud, and nothing in the SAC or the Opposition shows otherwise.

## IV.    PLAINTIFFS FAIL TO PLEAD CONTROL-PERSON CLAIMS

The Opposition does not dispute that Plaintiffs' claim under Section 20(a) fail with dismissal of the Section 10(b) claim. (Mot. at 25.)

## V.    CONCLUSION

The SAC should be dismissed for the reasons above. That Plaintiffs "failed to correct these deficiencies in [their] Second Amended Complaint is a strong indication that the plaintiffs have no additional facts to plead." *Zucco*, 552 F.3d at 1007 (internal quotation marks omitted). Accordingly, this Court should now dismiss this action with prejudice. *See also Curry*, 2015 WL 7454137, at *14 (dismissing amended complaint with prejudice).

15

Dated: July 31, 2024

MORRISON & FOERSTER LLP

*/s/ Christin Hill*

JORDAN ETH (SBN 121617)
JEth@mofo.com
CHRISTIN HILL (SBN 247522)
CHill@mofo.com
SUSANA HERRERA (SBN 348147)
SHerrera@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-1905
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendants Unity Software Inc.,
John S. Riccitiello, Ingrid Lestiyo, and Luis
Felipe Visoso*

16