QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Harry A. Olivar, Jr. (Bar No. 143089)
  harryolivar@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

  Linda J. Brewer (Bar No. 217730)
  lindabrewer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

*Attorneys for Defendants Sequoia Capital Operations, LLC and SC US SSF 2013 (TTGP), LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE UNITY SOFTWARE INC. SECURITIES LITIGATION | Case No. 5:22-cv-03962-EJD<br><br>**REPLY OF DEFENDANTS SEQUOIA CAPITAL OPERATIONS, LLC AND SC US SSF 2013 (TTGP), LLC IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:          Hon. Edward J. Davila<br>Hearing Date: September 12, 2024<br>Time:           9:00 a.m.<br>Ctrm:           4 |

**TABLE OF CONTENTS**

**Page**

I.    LEAD PLAINTIFFS STILL FAIL TO ALLEGE A PRIMARY VIOLATION ...................1

II.   LEAD PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUPPORTING
      CONTROL PERSON LIABILITY ...........................................................................................2

      A.    To Maintain a Control Person Claim, Lead Plaintiffs Must Allege Facts
            Showing the Sequoia Defendants Had Actual Power or Control over
            Unity's Day-to-Day Affairs, Management, and Policies ...........................................2

      B.    The Sequoia Defendants' Minority Stock Ownership and Ability to Appoint
            a Board Member Is Insufficient to State a Claim .......................................................4

      C.    The Designated Director's Signature on Unity's 2021 Form 10-K Is
            Insufficient to Demonstrate Control by the Sequoia Defendants (Who of
            Course Did Not Sign Anything)..................................................................................5

      D.    No Facts in the Complaint Show Actual Power or Control on the Part of the
            Sequoia Defendants, and Lead Plaintiffs' Citation to Inapposite Authorities
            Confirms They Cannot State a Claim .........................................................................7

      E.    Lead Plaintiffs Concede by Lack of Argument That the Sequoia Defendants
            Cannot Be Combined with Other Minority Investors for Control Person
            Purposes ...................................................................................................................8

      F.    Leave to Amend Should Be Denied............................................................................9

III.  CONCLUSION ....................................................................................................................9

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Allstate Life Ins. Co. Litig.*,
No. CV-09-08162-PHX-GMS, 2013 WL 789106 (D. Ariz. Mar. 1, 2013) .............................. 8

*In re American Apparel, Inc. S'holder Litig.*,
No. CV 10-06352 MMM, 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ........................... 7

*In re Amgen Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................. 6

*Arthur Child.'s Tr. v. Keim,*
994 F.2d 1390, 1397 (9th Cir. 1993) ................................................................ 3

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) ............................................................... 8

*Bao v. SolarCity Corp.*,
No. 14-CV-01435-BLF, 2015 WL 1906105 (N.D. Cal. Apr. 27, 2015) .............................. 4, 5

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ............................................................. 1

*In re CytRx Corp. Sec. Litig.*,
No. CV 14-1956-GHK, 2015 WL 5031232 (C.D. Cal. July 13, 2015) ............................... 3

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005) ............................................................... 4

*Fouad v. Isilon Sys., Inc.*,
No. C07-1764 MJP, 2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) .............................. 4, 8

*Golub v. Gigamon Inc.*,
372 F. Supp. 3d 1033 (N.D. Cal. 2019), *aff'd*, 994 F.3d 1102 (9th Cir.), and
*aff'd*, 847 F. App'x 368 (9th Cir. 2021) ............................................................. 2

*Greenberg v. Cooper Cos., Inc.*,
No. 11-CV-05697 YGR, 2013 WL 2403648 (N.D. Cal. May 31, 2013) .............................. 9

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) ................................................................. 4, 5

*Hayley v. Parker*,
No. Civ. 01-0069, 2002 WL 925322 (C.D. Cal. Mar. 15, 2002) ................................... 7

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ....................................................................... 2

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005) ...................................................................................... 3

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ................................................................................................. 2

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
  No. CV 15-8574 PSG, 2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) ...................................... 3

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ............................................................................................... 1, 2

*Shepherd v. S3 Partners, LLC*,
  No. C-09-01405 RMW, 2011 WL 4831194 (N.D. Cal. Oct. 12, 2011) .................................. 8

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  No. C 99-00109, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ......................................... 5, 6

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
  690 F. Supp. 2d 959 (D. Ariz. 2010) ....................................................................................... 6

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................................... 7

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d 964 (N.D. Cal. 2009) ..................................................................................... 7

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016) ...................................................................................... 6

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) ............................................................................................... 1, 2

*In re Weight Watchers International Inc. Sec. Litig.*,
  504 F. Supp. 3d 224 (S.D.N.Y. 2020) ...................................................................................... 6

*Welgus v. TriNet Grp., Inc.*,
  No. 15-CV-03625-BLF, 2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ..................................... 6

*Wool v. Tandem Computers Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ................................................................................................. 3

Lead Plaintiffs' Opposition makes clear that the Second Amended Complaint does not include sufficient facts for Lead Plaintiffs to maintain a control person claim against the Sequoia Defendants.[1]

As with the prior round of motions to dismiss the First Amended Complaint, Lead Plaintiffs' Opposition relies entirely on three allegations regarding control: (1) the Sequoia Defendants had minority stock ownership in Unity; (2) the Sequoia Defendants had a right to, and did, designate a single Unity board member; and (3) the board member Sequoia designated signed Unity's 2021 Form 10-K. Opp. at 40-43. Under settled case law in this Circuit, these allegations fail to state a control person claim: a defendant's minority shareholder status, coupled with ability to appoint a single board member (who obviously would sign public filings), is insufficient to establish control person liability. Nor can Lead Plaintiffs identify anything else in the Second Amended Complaint that shows the Sequoia Defendants had control over Unity's "management and policies" or its "day-to-day affairs" during the relevant period. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996).

Lead Plaintiffs' Section 20(a) claim against the Sequoia Defendants should be dismissed, this time with prejudice.

## I.     LEAD PLAINTIFFS STILL FAIL TO ALLEGE A PRIMARY VIOLATION

As an initial matter, for the reasons stated in the Unity Defendants' Motion to Dismiss and Reply (in which the Sequoia Defendants join), Lead Plaintiffs have again failed to allege a primary violation of the securities laws. Lead Plaintiffs' control person claim under Section 20(a) necessarily fails for this reason alone, as the Court recognized in dismissing the First Amended Complaint. ECF No. 124 at 17; *see also Webb v. Solarcity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018)

---

[1]   Capitalized terms not otherwise defined herein have the meanings assigned to them in Sequoia Capital Operations, LLC and SC US SSF 2013 (TTGP), LLC's Motion to Dismiss Second Amended Class Action Complaint ("Motion" or "Mot.") (ECF No. 131). "Opposition" or "Opp." refers to Lead Plaintiffs' Omnibus Brief in Opposition to Defendants' Motions to Dismiss (ECF No. 139).

(affirming dismissal of Section 20(a) claim where the plaintiff failed to allege primary violation); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1082 (N.D. Cal. 2010) (similar).

## II. LEAD PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUPPORTING CONTROL PERSON LIABILITY

### A. To Maintain a Control Person Claim, Lead Plaintiffs Must Allege Facts Showing the Sequoia Defendants Had Actual Power or Control over Unity's Day-to-Day Affairs, Management, and Policies

With respect to the control person claim, Lead Plaintiffs again have failed to supply facts sufficient to show the requisite claim on the part of the Sequoia Defendants.[2]  Lead Plaintiffs have failed to allege facts that show that the Sequoia Defendants "exercised actual power or control" over Unity.  *Webb*, 884 F.3d at 858 (citation omitted); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (same); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) ("[A] plaintiff must . . . show that the defendant exercised actual power over the primary violator."); *Paracor*, 96 F.3d at 1163 (no control person claim where the defendant did not exercise "control over the 'management and policies'" of the company nor "direct its day-to-day affairs").

Although Lead Plaintiffs attempt to distinguish the Ninth Circuit's decision in *Paracor* by arguing that it was "decided at summary judgment," Opp. at 42, Lead Plaintiffs do not dispute that *Paracor* sets forth the operative Ninth Circuit legal standard for a control person claim.  In the Ninth Circuit, a determination whether a defendant can be viewed as having "actual control" involves "scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."  96 F.3d at 1162; *see also Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1052-53 (N.D. Cal. 2019) ("In the Ninth Circuit, to exercise control over the primary violator, a Section 20(a) defendant must control 'management and policies' of the company or 'direct its day-to-day affairs.'"), *aff'd*, 994 F.3d 1102 (9th Cir.), and *aff'd*, 847 F. App'x 368 (9th

---

[2]  The Sequoia Defendants also join in the Section 20(a) arguments advanced in Silver Lake's Motion to Dismiss and Reply.

Cir. 2021). Lead Plaintiffs have failed to satisfy this standard with respect to the Sequoia Defendants.

Lead Plaintiffs concede that they must allege facts showing the Sequoia Defendants "exercised actual power or control over the primary violator." Opp. at 38. Yet, having acknowledged the standard, they fail to identify any facts actually alleged that could show the Sequoia Defendants exercised "actual power or control" over Unity's day-to-day affairs or management and policies. Instead, Lead Plaintiffs cite two district court cases for the proposition that "only some indirect means of discipline or influence short of actual direction [is required] to hold a controlling person liable." Opp. at 38 (citing *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1032 (S.D. Cal. 2005)); *see also Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV 15-8574 PSG (MRWx), 2017 WL 3187688, at *22 (C.D. Cal. Jan. 17, 2017). Putting aside whether these two cases—both of which rely on out-of-circuit authority—are consistent with the standard in the Ninth Circuit and this district, Lead Plaintiffs have failed to allege facts showing that the minority-investor Sequoia Defendants had an "indirect means of discipline or influence" over Unity's business affairs at the relevant time.

Indeed, in their Opposition, Lead Plaintiffs rely on cases analyzing control of a company by individual officers or directors—not by minority shareholders—to argue that control is sufficiently pleaded based on a defendant's "high level position[.]" Opp. at 38, 41. But Lead Plaintiffs cannot allege the Sequoia Defendants had any "position" at all at Unity; the cases they cite involve control person claims against high-ranking individual officers or directors at a company, not outside, minority shareholders like the Sequoia Defendants. *See In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 WL 5031232, at *17 (C.D. Cal. July 13, 2015) (analyzing control person claims against the company's Chief Executive Officer, Chief Financial Officer, and Vice President of Business Development, and against certain directors alleged to have had actual control over a Registration Statement they signed); *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987) (analyzing control person claims against corporate officers charged with day-to-day operations), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc); *see also Arthur Child.'s Tr. v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993)

(considering whether individual defendant who was a "Management Committee" member, whose "decisions . . . were binding" on the joint venture, and who was a "vocal and active participant in the management of the venture," had exercised sufficient control).

Lead Plaintiffs also argue that the "control person" analysis is fact-intensive, suggesting that inadequate control person allegations cannot ever be disposed of at the pleading stage. Opp. at 39, 43. Any such suggestion is contrary to law; courts routinely dismiss inadequate control person claims, including in numerous cases involving minority shareholders, at the pleading stage. *See* Mot. at 5-7.

**B.     The Sequoia Defendants' Minority Stock Ownership and Ability to Appoint a Board Member Is Insufficient to State a Claim**

As set forth in the Motion, the Sequoia Defendants' alleged ownership of between 20.6% and 13.2% of Unity's stock at relevant times, coupled with the ability to propose a single director on an eight- to ten-member board, is insufficient to establish control. *See* Mot. at 5-6. Lead Plaintiffs' arguments to the contrary are undermined by the numerous cases cited in the Motion that dismissed similarly inadequate control person claims. *See id.* at 5-6; *see, e.g.*, *Fouad v. Isilon Sys., Inc.*, No. C07-1764 MJP, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) ("Courts in this Circuit have held that a defendant's status as minority shareholder is insufficient to establish control person liability, even when combined with the power to appoint directors."); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) (same); *Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015) (dismissing 30% shareholder who was also board chairman); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) (dismissing claim against 30% shareholder with right to appoint three of nine board members, finding plaintiffs failed to allege facts showing "the power to direct or cause the direction of the management and policies of" the company).

Although Lead Plaintiffs attempt to distinguish this district's decision in *Bao v. SolarCity Corp.* by arguing that there, "factual allegations as to [the defendant's] decision-making powers," were not pled (Opp. at 42), Lead Plaintiffs fail to identify *any* allegations in their Second Amended Complaint that actually could be viewed as improving on what was alleged in *Bao*. Notably, Lead

Plaintiffs can identify no allegations they make that would qualify as "factual allegations as to the [Sequoia Defendants'] decision-making powers" here. Instead, the Opposition relies on exactly the type of allegations found insufficient in *Bao*. *See* Opp. at 43 (relying on allegations that the Sequoia Defendants "had substantial holdings in Unity;" and had a "designee[]" on the Unity board). If anything, the allegations in *Bao* more strongly suggested control than the minimal allegations Lead Plaintiffs have been able to make against the Sequoia Defendants here. For example, in *Bao*, the individual defendant at issue held 30% ownership in the company, was chairman of the board, was related to the company's officers, and signed certain of the company's financial statements – and all of that still was insufficient to support a control person claim. *Bao*, 2015 WL 1906105, at *5.

Similarly, Lead Plaintiffs' attempt to distinguish *In re Gupta Corp.*, by arguing that the control person claims there were dismissed because the plaintiffs did not plead any "specific circumstances or instances indicative of control," does not actually distinguish *In re Gupta* at all. Opp. at 42. Lead Plaintiffs do not explain how the Second Amended Complaint here presents any improvement on the facts alleged in *In re Gupta*. Instead, like the plaintiffs in *In re Gupta*, Lead Plaintiffs rely on the Sequoia Defendants' minority ownership interest and ability to appoint a board member, which the district court in *In re Gupta* explained is insufficient to allege that defendants "exerted real control or influence over [the company]." 900 F. Supp. at 1243; *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109 SBA, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (allegations that the defendant held 20% ownership in the company, the defendant's Chief Executive Officer served on the company's board, and the majority of the company's officers were former employees of the defendant, among other things, were still insufficient to plead control).

C.    **The Designated Director's Signature on Unity's 2021 Form 10-K Is Insufficient to Demonstrate Control by the Sequoia Defendants (Who of Course Did Not Sign Anything)**

Nor does the Sequoia Defendants' board designee signing the 2021 Form 10-K suffice to allege the Sequoia Defendants' control of Unity. The Opposition presents a confused discussion that relies heavily on cases against individual officer and director defendants and tries to extend those to argue control on the part of the minority-investor Sequoia Defendants. But the cases about

directors who signed public filings say nothing about control by outside, minority shareholders that did not sign public filings. *See* Opp. at 41; *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 543 (S.D.N.Y. 2016) (Section 20(a) claims against individuals only); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) (same); *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 974-76 (D. Ariz. 2010) (Section 20(a) claims against individual officers and directors).

Lead Plaintiffs also misread the New York district court's holding in *In re Weight Watchers International Inc. Securities Litigation*, 504 F. Supp. 3d 224, 263 (S.D.N.Y. 2020). Although the court in *Weight Watchers* found that control person claims were sufficiently pleaded against certain individual officers and directors, the court held that the plaintiffs had *not* adequately alleged the minority shareholder in that case had "control over [the company's] day-to-day business." *Id* at 264. In fact, the allegations in *Weight Watchers* that a minority shareholder held 46.3% of the company's shares through an agreement, and placed a member of the company's board who then signed allegedly false and misleading filings, were *not* sufficient to plead a control person claim against the minority shareholder. *Id.* ("[The director's] signature on the registration statement and other SEC filings *does not equate* to [the shareholder entity] signing the documents" because the director was "not [signing] as the managing director of [the shareholder entity].") (emphasis added).

Other courts in this district have held the same. *See Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 167708, at *13 (N.D. Cal. Jan. 17, 2017) (dismissing claim against third-party investor where appointed directors signed allegedly false financial statements, but the investor did not); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (similar). Here, although the Sequoia Defendants' designated director signed Unity's 2021 Form 10-K in his capacity as a Unity director, there are and can be no allegations that the Sequoia Defendants themselves signed any public filings, helped prepare any public filings, or had any control over Unity's SEC filings (or any other aspect of its business).

**D.    No Facts in the Complaint Show Actual Power or Control on the Part of the Sequoia Defendants, and Lead Plaintiffs' Citation to Inapposite Authorities Confirms They Cannot State a Claim**

Lead Plaintiffs' remaining cases are distinguishable.  In each, far more was alleged to show the defendant's "actual power or control" over the day-to-day operations and corporate actions of the primary violator than Lead Plaintiffs can allege with respect to the Sequoia Defendants here.

In *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016), the defendant was a majority owner of the company, owned 70.3% of the company's shares, and appointed a majority of the company's board of directors.  Although the defendant eventually sold some shares during the class period and lost its status as majority shareholder, the plaintiffs asserted that the defendant "retained its control" of the company.  *Id.* at 1048.  Among other things, the company itself stated that the shareholder "will continue to have significant influence over [the company's] affairs for the foreseeable future" and "will be able to control most matters requiring stockholder approval" and the plaintiffs alleged the shareholder "used its control . . . to cash out its investments in the Company at enormous profits."  *Id.* at 1048-49.  In combination, such allegations were found sufficient to allege control. *Id.*  No comparable allegations are or can be pleaded against the Sequoia Defendants.

In *In re UTStarcom, Inc. Securities Litigation*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009), the defendant was the company's "third largest customer and its largest shareholder."  Nothing like that can be alleged against the Sequoia Defendants here.

In *In re American Apparel, Inc. Shareholder Litigation*, No. CV 10-06352 MMM (RCx), 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013), the defendant appointed two directors, had a "significant lending relationship" with the company, and the company's Chief Executive Officer allegedly agreed that the defendant entity was "going to be involved in 'management decisions as far as strategic issues.'" *Id.* at *37; *see also Hayley v. Parker*, No. Civ. 01-0069, 2002 WL 925322, at *10 (C.D. Cal. Mar. 15, 2002) (plaintiffs alleged that an issuer control person defendant exercised control over certain individual defendants, including its Chief Executive Officer and Chief Financial

Officer, who initiated the allegedly false statements).  Again, nothing like this is, or could be, included in the scant allegations against the Sequoia Defendants.

The same is true of the cases Lead Plaintiffs cite in support of their argument that "minority stock ownership combined with presence on the board of directors suffice for control."  Opp. at 42.  Each case Lead Plaintiffs cite for this proposition confirms the opposite, that such allegations do not suffice at all; in each, significantly more was alleged to support "control" than can be alleged against the Sequoia Defendants.  *See* Opp. at 41-43; *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 946-47 (S.D. Cal. 2019) (defendant held as much as 42.8% of the company and three board seats during class period); *Shepherd v. S3 Partners, LLC*, No. C-09-01405 RMW, 2011 WL 4831194, at *5 (N.D. Cal. Oct. 12, 2011) (three individual defendants were the "principals and primary decision-makers" and founders of the company, and defendant consulting group owned one-third of the company, among other things); *In re Allstate Life Ins. Co. Litig.*, No. CV-09-08162-PHX-GMS, 2013 WL 789106, at *4 (D. Ariz. Mar. 1, 2013) (individual defendant was chairman of company and the chairman position "came with significant supervisory responsibilities," including obligating the defendant to "supervise and control all of the business and affairs of the corporation and the performance by all of its other officers").

E.    **Lead Plaintiffs Concede by Lack of Argument That the Sequoia Defendants Cannot Be Combined with Other Minority Investors for Control Person Purposes**

The Opposition does not identify any allegations that would allow Lead Plaintiffs to lump the Sequoia Defendants together with other minority shareholders, such as Silver Lake, to create a "controlling" shareholder.  As the Motion explained, the conclusory allegations in the Second Amended Complaint do not show that the Sequoia Defendants acted in concert with Silver Lake or other minority shareholders, even when read in the light most favorable to Lead Plaintiffs.  *See* Mot. at 8; *Fouad*, 2008 WL 5412397 at *13 (dismissing control person claims against minority shareholders where "plaintiff did not sufficiently "alleg[e] that the Venture Capital Defendants controlled [defendant] by acting in concert.").  Lead Plaintiffs apparently concede this point.

### F.      Leave to Amend Should Be Denied

After filing the First Consolidated Amended Complaint, Lead Plaintiffs amended their claims again after the Court granted motions to dismiss the First Amended Complaint.  But the Second Amended Complaint still fails to state a primary violation or a control person claim, and its allegations of control against the Sequoia Defendants remain substantively unchanged.  This shows that any further attempt to amend these claims would be futile.  The Court should deny Lead Plaintiffs' generalized request for leave to amend, which provides no facts that could cure the Second Amended Complaint's defects, and should dismiss Lead Plaintiffs' claims against the Sequoia Defendants with prejudice.  *See Greenberg v. Cooper Cos., Inc.*, No. 11-CV-05697 YGR, 2013 WL 2403648, at *15 (N.D. Cal. May 31, 2013) (denying leave to amend where "Plaintiff was provided with an opportunity to cure the deficiencies in its first consolidated amended complaint but failed to do so").

## III.      CONCLUSION

For the foregoing reasons, the Sequoia Defendants respectfully request that the Court grant their Motion to Dismiss with prejudice.

DATED:  July 31, 2024                    Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____ */s/ Harry A. Olivar* _____
HARRY A. OLIVAR, JR.

*Attorneys for Defendants Sequoia Capital Operations, LLC and SC US SSF 2013 (TTGP), LLC*