IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


IN RE UNITY SOFTWARE, INC.        )   CV-22-3962-EKL
SECURITIES LITIGATION             )
                                  )   SAN JOSE, CALIFORNIA
                                  )
                                  )   FEBRUARY 5, 2025
                                  )
                                  )   PAGES 1-38
                                  )
                                  )
                                  )
_____   )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EUMI K. LEE
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:       BY:  CAROL C. VILLEGAS
                         LABATON KELLER SUCHAROW LLP
                         140 BROADWAY
                         NEW YORK, NY 10005


FOR THE DEFENDANT:       BY:  CHRISTIN J. HILL
                              JORDAN ETH
                         MORRISON & FOERSTER LLP
                         425 MARKET STREET
                         SAN FRANCISCO, CA 94105


(APPEARANCES CONTINUED ON THE NEXT PAGE.)




OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                            CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES (CONT.'D):

FOR THE DEFENDANT:        BY:  VICTORIA BLOHM PARKER
SEQUOIA                   QUINN EMANUEL URQUHART & SULLIVAN, LLP
                          50 CALIFORNIA STREET, 22ND FLOOR
                          SAN FRANCISCO, CA 94111


FOR THE DEFENDANT:        BY:  STEPHEN PATRICK BLAKE
SILVER LAKE GROUP         SIMPSON THACHER BARTLETT LLP
                          2475 HANOVER ST
                          PALO ALTO, CA 94304

SAN JOSE, CALIFORNIA                    FEBRUARY 5, 2025

P R O C E E D I N G S

(COURT CONVENED AT 10:38 A.M.)

THE CLERK:  CALLING 5-22-CV-3962-EKL.  IN RE UNITY SOFTWARE, INC. SECURITIES LITIGATION.

ONCE YOU ARE ALL SITUATED, WE WILL HAVE YOU COME FORWARD AND STATE YOUR APPEARANCES, STARTING WITH COUNSEL FOR LEAD PLAINTIFFS.

MS. VILLEGAS:  GOOD MORNING, YOUR HONOR.

CAROL VILLEGAS FROM LABATON KELLER SUCHAROW ON BEHALF OF THE LEAD PLAINTIFFS AND THE CLASS.

THE COURT:  GOOD MORNING.

MS. HILL:  GOOD MORNING, YOUR HONOR.

CHRISTIN HILL FROM MORRISON & FOERSTER ON BEHALF OF THE UNITY DEFENDANTS.  THAT'S UNITY, THE CORPORATION, JOHN RICCITIELLO, LUIS VISOSO AND INGRID LESTIYO.  I'M JOINED BY MY PARTNER, JORDAN ETH.  AND WE ALSO HAVE OUR CLIENTS IN THE ROOM, ANIRMA GUPTA AND THE NORA GO ARE BOTH REPRESENTATIVES OF UNITY.

THE COURT:  GOOD MORNING TO EVERYBODY, WELCOME TO THE COURTROOM.

ALL RIGHT.  AND SO WE ARE HERE TODAY ON THE DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT.  THE COURT HAS SENT OUT A TENTATIVE, IT ALSO REALLY FOCUSED ON WHETHER OR NOT PLAINTIFFS HAD AMENDED, AND THE COURT INSTITUTED A PREVIOUS ISSUED BY JUDGE DAVILA AND RESOLVED THE ISSUES THAT HAD BEEN

PRESENTED, AND HAD INDICATED THAT I BELIEVE APPROXIMATELY 20 MINUTES, BUT WE WILL SEE IF THAT'S A LITTLE AMBITIOUS.

BUT WITH THAT, IS THERE ANYTHING BEFORE WE BEGIN OUR ARGUMENT?

MS. HILL:  COUNSEL FOR -- THERE IS TWO OTHER DEFENDANTS HERE PRESENT, I THINK THEY WANTED TO ENTER THEIR APPEARANCES AS WELL.

THE COURT:  THANK YOU.

MS. PARKER:  GOOD MORNING, YOUR HONOR.

VICKI PARKER OF QUINN EMANUEL ON BEHALF OF THE SEQUOIA DEFENDANTS.

THE COURT:  THANK YOU VERY MUCH.  GOOD MORNING.

MR. BLAKE:  GOOD MORNING, YOUR HONOR.

STEPHEN BLAKE FROM SIMPSON THACHER ON BEHALF OF SILVER LAKE GROUP.  NICE TO SEE YOU.

THE COURT:  ALL RIGHT.  NICE TO MEET EVERYBODY.

AND MS. GUPTA, JUST TO CLARIFY, ARE YOU DOING THE -- I MISSPOKE.  I JUST WANT TO CONFIRM, ARE DEFENDANTS PLANNING TO CONSOLIDATE THEIR ARGUMENTS IN TERMS OF ONE, OR HOW WERE YOU --

MS. HILL:  YOUR HONOR, YOU ARE WELCOME TO ASK WHATEVER QUESTIONS YOU HAVE.  I WILL BE TAKING THE LEAD ON THE ARGUMENTS ON BEHALF OF THE DEFENDANTS.  IF YOU HAVE ANY QUESTIONS ABOUT SILVER LAKE OR SEQUOIA, OF COURSE THEY ARE PRESENT TO ANSWER ANY QUESTIONS YOU MAY HAVE.

THE COURT:  PERFECT.  I MEANT TO CLARIFY THAT

EARLIER.  SO WITH THAT, WE CAN BEGIN WITH ARGUMENT.

PLEASE, BEGIN.

MS. HILL:  THANK YOU, YOUR HONOR.

WE HAVE REVIEWED YOUR TENTATIVE AND CERTAINLY AGREE WITH IT AND DO NOT FEEL THE NEED TO BELABOR THE POINTS THEREIN AND I WOULD RESERVE MY TIME PRIMARILY FOR REBUTTAL TO WHATEVER THE PLAINTIFFS HAVE TO SAY TODAY.

THE ONE POINT I WOULD RAISE AFFIRMATIVELY IS THAT YOUR ORDER DOES NOT MENTION WHETHER OR NOT YOU ARE INCLINED TO GRANT LEAVE TO AMEND.  WE WOULD ASK, AND OUR MOTION REQUESTS DISMISSAL WITH PREJUDICE, WE THINK THAT IS APPROPRIATE IN THIS CASE.

THIS CASE HAS BEEN GOING ON FOR TWO AND A HALF YEARS. THIS IS -- WE ARE NOW AT THE SECOND AMENDED COMPLAINT AT THIS POINT.  THERE WAS A PLACEHOLDER COMPLAINT, A FIRST AMENDED COMPLAINT, AND WE ARE CURRENTLY AT THE SECOND AMENDED COMPLAINT.

AND THE SECOND AMENDED COMPLAINT COMES AFTER VERY CLEAR INSTRUCTIONS FROM JUDGE DAVILA ABOUT THE SPECIFIC DEFICIENCIES IN THE COMPLAINT AND WHAT NEEDED TO BE FIXED.  AND THESE ARE VERY SOPHISTICATED PLAINTIFFS AND THEY HAVE DONE THIS MANY TIMES BEFORE.  THEY UNDERSTOOD THE ORDER THAT WAS FROM THE JUDGE AND THEY DID NOT REMEDY ANY OF THOSE DEFICIENCIES, AND I WOULD SAY THAT SUGGESTS STRONGLY THEY CANNOT REMEDY THOSE DEFICIENCIES, SO IT WOULD BE A WASTE OF PARTY AND JUDICIAL

RESOURCES TO CONTINUE TO LITIGATE THIS OVER AND OVER AGAIN WHEN IT'S VERY CLEAR THAT FURTHER AMENDMENT WOULD BE FUTILE.

THE COURT:  OKAY.

WELL THAT IS ONE OF THE QUESTIONS WHICH I HAVE FOR THE PARTIES TODAY, SO THANK YOU FOR ADDRESSING THAT, MS. HILL.  AND WE WILL RESERVE THE REST OF THE TIME FOR REBUTTAL FOR UNITY.

MS. HILL:  THANK YOU.

MS. VILLEGAS:  THANK YOU, YOUR HONOR.

CAROL VILLEGAS ON BEHALF OF THE PLAINTIFFS.

SO I WILL START, YOUR HONOR, WITH WHAT OUR CASE IS ABOUT WHICH IS ESSENTIALLY THAT UNITY AND THE INDIVIDUAL DEFENDANTS MISLEAD THE MARKET ABOUT THEIR AUDIENCE PINPOINTER TECHNOLOGY.

AND THE TECHNOLOGY WAS IMPORTANT TO THE COMPANY, IT WAS MATERIAL, BECAUSE APPLE'S PRIVACY CHANGES IN 2021 TO REMOVE INDIVIDUAL DEVICE IDENTIFIERS, LIKE IDFA'S, WAS REALLY GOING TO DRAMATICALLY CHANGE THE ADVERTISING MARKET FOR UNITY AS WELL AS ESSENTIALLY THE WHOLE MARKET.

SO OUR CASE IS ABOUT ALLEGATIONS THAT THEY MISLEAD THE MARKET ABOUT THE EFFECTIVENESS OF AUDIENCE PINPOINTER AND THAT THEY MISLEAD THE MARKET AS TO THE LEVEL OF COMPLAINTS THAT THEY WERE GETTING FROM THEIR CUSTOMERS.

SO STARTING WITH THE COURT'S ORDER GRANTING THE MOTION TO DISMISS, JUDGE DAVILA DISMISSED BECAUSE HE SAID WE HADN'T PLED WITH SUFFICIENT PARTICULARITY WHAT THE PROBLEMS WITH AUDIENCE PINPOINTER WERE WHEN THEY FIRST STARTED HAPPENING, AND THEN THE

LEVEL OR SCOPE OF THE COMPLAINTS THAT UNITY WAS RECEIVING FROM THEIR CUSTOMERS.

WE BELIEVE OUR NEW ALLEGATIONS SUFFICIENTLY ADDRESS THESE ISSUES THAT JUDGE DAVILA HAD.  AND I WILL START WITH CONFIDENTIAL WITNESS TWO.  THESE ARE PARAGRAPHS 109 THROUGH 117 OF THE AMENDED COMPLAINT.  HE WAS A SENIOR MANAGER IN THE PRODUCT RESEARCH DEPARTMENT AT UNITY FROM MAY 2021 UNTIL AUGUST OF 2022.

THE COURT:  YOU ARE ON CW2?

MS. VILLEGAS:  YES.

THE COURT:  THANK YOU.

MS. VILLEGAS:  SO HIS JOB WAS ACTUALLY TO LOOK AT CUSTOMER EXPERIENCE BY PRODUCT AND GET CUSTOMER FEEDBACK ON PINPOINTS, ON ISSUES, ON PROBLEMS, AND PROVIDE THIS INFORMATION TO THE UNITY PRODUCT TEAMS.  THAT'S PARAGRAPH 84.

CONFIDENTIAL WITNESS 2 ACTUALLY GIVES US THE TIMING THAT JUDGE DAVILA SAID WE WERE LACKING IN THE FIRST AMENDED COMPLAINT.  HE SAID UPON THE INTRODUCTION OF APPLE'S IDFA CHANGES IN APRIL OF 2021, SO THAT'S ONE MONTH BEFORE THE CLASS PERIOD STARTS, HIS TEAM WAS IMMEDIATELY SEEING CUSTOMER COMPLAINTS THAT AUDIENCE PINPOINTER WAS NOT WORKING, THAT'S PARAGRAPH 109 OF OUR COMPLAINT.

CONFIDENTIAL WITNESS 2 EXPLAINS THAT AFTER SPIKING SHARPLY, AFTER THE ROLLOUT OF AUDIENCE PINPOINTER, AGAIN IN APRIL 2021, THE VOLUME OF COMPLAINTS REGARDING AUDIENCE

PINPOINTER REMAINED CONSISTENT.

SO THEY WENT UP AND THEY REMAINED CONSISTENT THROUGHOUT 2021 AND 2022.  SO OUR ENTIRE CLASS PERIOD, AND THEY DID NOT IMPROVE OVER THE COURSE OF HIS TENURE.  THAT'S PARAGRAPH 113.

CONFIDENTIAL WITNESS 2 CALLED THIS A MASSIVE INCREASE IN COMPLAINTS, WHICH HE RECALLED INCREASED FIVEFOLD.

THE COURT:  SO THE MASSIVE INCREASE IN COMPLAINTS, WHICH IT INCREASED FIVEFOLD, THAT WAS IN THE PREVIOUS COMPLAINT, CORRECT, WHICH JUDGE DAVILA HAD REVIEWED?

MS. VILLEGAS:  EXCEPT THE TIMING WASN'T THERE, YOUR HONOR.  AND I THINK THE TIMING IS REALLY IMPORTANT HERE BECAUSE CONFIDENTIAL WITNESS 2 TELLS US THIS HAPPENS IN APRIL 2021, RIGHT WHEN AUDIENCE PINPOINTER IS LAUNCHED AND THE IDFA CHANGES ARE COMING INTO EFFECT.  OUR CLASS PERIOD STARTS ONE MONTH LATER.

THE COURT:  IN MAY, YES.

MS. VILLEGAS:  SO ANOTHER IMPORTANT FACT THAT CONFIDENTIAL WITNESS 2 TELLS US IS THAT THIS AFFECTED CUSTOMERS OF ALL SIZES, SMALL AND MEDIUM SIZED BUSINESSES, AS WELL AS ENTERPRISE CUSTOMERS.  SO THIS WAS A PROBLEM THAT EXISTED THROUGHOUT THEIR CUSTOMER BASE.

AND IMPORTANTLY, THE MASSIVE LEVEL OF COMPLAINTS IS CORROBORATED BY CONFIDENTIAL WITNESS NUMBER 1 WHO WAS --

THE COURT:  DO WE HAVE A SENSE FROM CONFIDENTIAL WITNESS NUMBER 1 OR 2 OR 6 FOR THAT MATTER ABOUT THE LEVEL, THE

ACTUAL LEVEL OF COMPLAINTS, THE AMOUNT OF COMPLAINTS THAT WERE BEING RECEIVED?

MS. VILLEGAS:  YES.  SO CONFIDENTIAL WITNESS NUMBER 1 ACTUALLY TELLS US THAT HE DID A STUDY THAT SORT OF LOOKED RETROSPECTIVELY BACK FROM SEPTEMBER/OCTOBER OF 2021 TO THE AMOUNT OF COMPLAINTS THAT THEY WERE GETTING STARTING AROUND MAY/JUNE OF 2021, AND THOSE COMPLAINTS NUMBERED IN THE THOUSANDS.

AND I THINK IT'S SIGNIFICANT TO PUT IT INTO PERSPECTIVE BECAUSE UNITY HAS ABOUT A THOUSAND CUSTOMERS.  AND UNITY WAS FIELDING THOUSANDS, THAT'S MULTIPLE THOUSANDS OF COMPLAINTS IN JUST THE FIRST THREE MONTHS PERIOD AT THE BEGINNING OF THE CLASS PERIOD.  AND I THINK QUALITY SYSTEMS SAYS YOU CAN LOOK AT BOTH OF THESE CONFIDENTIAL WITNESSES, ALL OF THE CONFIDENTIAL WITNESSES TOGETHER, YOU CAN LOOK AT THEIR ALLEGATIONS AND SEE WHAT THEY CORROBORATE.

AND IF YOU TAKE ALLEGATIONS FROM CW1 ABOUT THERE BEING THOUSANDS OF COMPLAINTS AND ALLEGATIONS FROM CW2 WHO TELLS US THAT THE COMPLAINTS ROSE SHARPLY AND THEY STAYED UP THERE THE WHOLE TIME, THEN YOU SEE THAT WE HAVE A LARGE VOLUME OF COMPLAINTS THROUGHOUT THE CLASS PERIOD.  AND THIS IS ACTUALLY BORNE OUT BY THE NEGATIVE FINANCIAL EFFECT THAT IT ULTIMATELY HAS ON THE COMPANY.

THE COURT:  WELL, BEFORE WE GET TO THE FINANCIAL -- FINANCIAL EFFECT, WHAT ARE PLAINTIFF'S ALLEGATIONS AS TO WHAT

WAS ACTUALLY WRONG WITH THE PRODUCT?

MS. VILLEGAS:  YEAH.  THANK YOU, YOUR HONOR.  SO THAT WAS GOING TO BE MY NEXT POINT BECAUSE THE JUDGE DID RAISE THAT IN HIS ORDER AND SO WE BELIEVE IT'S SOMETHING WE HAVE NOW CURED.

SO CONFIDENTIAL WITNESS 2 TELLS US AT PARAGRAPH 113 THAT AUDIENCE PINPOINTER WAS RUSHED TO THE MARKET AND CUSTOMERS COMPLAINED ABOUT ISSUES ABOUT ACCURACY OF THE PRODUCT.

AND SO THE WAY THIS PRODUCT WORKED IS THAT IT WAS SUPPOSED TO TAKE INFORMATION FROM USERS WHO WERE USING UNITY GAMES, AND BASED ON THINGS THAT THEY WERE CLICKING ON OR ADS THAT THEY WERE RESPONDING TO, AUDIENCE PINPOINTER WAS MEANT TO SORT OF FIGURE OUT, WELL WHO IS GOING TO BUY SOMETHING IF I SHOW THEM AN AD, AND WHO IS ANYTHING TO BUY CLOTHING IF I SHOW THEM A CLOTHING AD, OR WHO IS GOING TO BUY A TOOL IF I SHOW THEM AN AD FOR A TOOL.

SO THE WAY AUDIENCE PINPOINTER WORKED WAS TO TRY TO FIGURE OUT WHO WERE THE BEST TARGETS WERE FOR THESE ADS.  AND CONFIDENTIAL WITNESS 2 TELLS US THAT THE PROBLEM WAS AND WHAT THE COMPLAINTS WERE ABOUT WAS THE ACCURACY OF THE PRODUCT. CONFIDENTIAL WITNESS 1 TELLS US -- AND THIS IS PARAGRAPHS 120 AND 121 -- THE ALGORITHMS RESPONSIBLE FOR SHOWCASING THE ADS WERE NOT AS EFFECTIVE AS THE CUSTOMERS WANTED, THEY JUST WEREN'T WORKING WELL TO PROVIDE THE RETURN ON INVESTMENT. CONFIDENTIAL WITNESS 1 SAYS THEY BACKFIRED, THEY WEREN'T

MATCHING UP, THEY STOPPED WORKING.

AND SO THE PROBLEM WITH AUDIENCE PINPOINTER IS REALLY JUST AS SIMPLE AS WHAT IT WAS MEANT TO DO.  THE ALGORITHMS WERE NOT ACCURATE IN TARGETING ADS TO USERS, SO THE CUSTOMERS WEREN'T MAKING THE MONEY THAT THEY EXPECTED TO.  AND AT THE END OF THE CLASS --

THE COURT:  SO YOU AGREE WITH ME THAT THE ISSUE OF WHAT THE PROBLEMS WERE WITH THE PRODUCT, ONE OF THE ISSUES RAISED IN THE ORIGINAL ORDER ON THE MOTION TO DISMISS.

MS. VILLEGAS:  YES, YOUR HONOR.  AND IT'S ACTUALLY SOMETHING THAT DEFENDANTS ADMIT AT THE END OF THE CLASS PERIOD, THEY SAY THE PROBLEM WITH AUDIENCE PINPOINTER WAS REDUCED ACCURACY.

THE COURT:  AND YOU ARE DIRECTING THE COURT'S ATTENTION TO CW1?  THOSE STATEMENTS ARE THE SAME, THERE WERE NO CHANGES MADE TO THOSE STATEMENTS.

MS. VILLEGAS:  THAT'S RIGHT, YOUR HONOR.  BUT WE DID AD SOME INFORMATION FROM CW2, I BELIEVE IN PARAGRAPHS 113 AND 114.

AND SO IF I COULD PIN IT, YOUR HONOR, WE ESTABLISHED THERE WERE COMPLAINTS, THERE WERE A LOT OF COMPLAINTS, THESE COMPLAINTS STARTED COMING IN RIGHT BEFORE THE CLASS PERIOD STARTS, THEY REMAIN ELEVATED THROUGHOUT THE ENTIRE CLASS PERIOD.  AND I JUST WANT TO MAKE THE LINK BETWEEN THOSE ALLEGATIONS AND THE NEW ALLEGATIONS AND FALSITY.

SO GOING TO OUR FALSE STATEMENTS, WE ALLEGE THAT STATEMENTS LIKE AUDIENCE PINPOINTER IS WORKING WELL.  THAT IS STATEMENT 1 AND STATEMENT 20.

THEY TALK ABOUT HOW AUDIENCE PINPOINTER CAN DELIVER THE BEST ROI, RETURN ON INVESTMENT, FOR THE CUSTOMERS.  THAT'S STATEMENT 13.  THEY TOUT STRONG PERFORMANCE OF AUDIENCE PINPOINTER, STATEMENT 31.  AND STRONG CUSTOMER FEEDBACK, STATEMENTS 3 AND 21.

WE ALLEGE THAT THOSE STATEMENTS ARE FALSE AND MISLEADING BECAUSE CONFIDENTIAL WITNESSES TELL US THAT AUDIENCE PINPOINTER WASN'T WORKING CORRECTLY, THEY TELL US WHY IT WASN'T WORKING CORRECTLY AND THAT UNITY WAS RECEIVING A MASSIVE NUMBER OF CUSTOMER COMPLAINTS.  THEY TELL US THAT CUSTOMERS WERE ACTUALLY LEAVING FOR COMPETITORS, INCLUDING FACEBOOK AND IRONSOURCE, AND THAT ULTIMATELY THIS WAS HAVING A NEGATIVE EFFECT ON THE REVENUE GROWTH AND ULTIMATELY A NEGATIVE EFFECT ON REVENUE.

AND IF YOU LOOK AT THE FALSE AND MISLEADING STATEMENTS, YOUR HONOR, I BELIEVE WE HAVE ALLEGED 40 OF THEM.

THE COURT:  YES.

MS. VILLEGAS:  THEY ARE ALL REALLY CONVEYING THE SAME THING.  WHEN THE DEFENDANTS TALK ABOUT THINGS LIKE THE MONETIZATION PLATFORM, THE OPTIMIZATION ALGORITHM AND HOW THESE GAVE UNITY THE ABILITY TO MANAGE THE APPLE IDFA PRIVACY CONCERNS, THEY ARE TALKING ABOUT AUDIENCE PINPOINTER.  EVEN IF THEY'RE NOT USING THE WORDS "AUDIENCE PINPOINTER," THAT'S WHAT

THEY ARE TALKING ABOUT.  THEY ARE TALKING ABOUT THE PRODUCT, HOW IT'S WORKING AND THAT THEY ARE DELIVERING A SUCCESSFUL PRODUCT.  THESE STATEMENTS PROVIDE ACTIONABLE, CONCRETE DESCRIPTIONS OF THE PAST AND PRESENT IN THE FORM OF FACTUAL STATEMENTS ABOUT UNITY'S PREPAREDNESS FOR IDFA CHANGES AND THE EFFECTIVENESS OF AUDIENCE PINPOINTER'S TECHNICAL CAPABILITIES.

AND ONE OF THE CASES WE CITED HERE IS TWITTER.  WE THINK THAT CASE IS INSTRUCTIVE BECAUSE THERE THE COURT FOUND ACTIONABLE, STATEMENTS THAT SUGGESTED USER ENGAGEMENT WAS IMPROVING WHEN PLAINTIFF ADEQUATELY ALLEGED FLAT OR DECLINING USERS AND OTHER PROBLEMS WITH USER ENGAGEMENT.

AND I THINK IT'S IMPORTANT ALSO TO --

THE COURT:  REPEAT THAT AGAIN FOR ME, COUNSEL.

MS. VILLEGAS:  SURE.

ESSENTIALLY WHAT TWITTER STANDS FOR IS THAT YOU ARE PRESENTING TO THE MARKET A STATE OF AFFAIRS THAT DOESN'T EXIST INTERNALLY.  AND TWITTER SAID STATEMENTS THAT SUGGESTED USER ENGAGEMENT WAS IMPROVING, WHEN PLAINTIFF ADEQUATELY ALLEGED FLAT OR DECLINING USERS AND OTHER PROBLEMS WITH USER ENGAGEMENT, FOUND THOSE STATEMENTS TO BE FALSE.

AND THE NEXT POINT I WAS GOING TO MAKE, YOUR HONOR, IS WHEN WE TALK ABOUT HOW THE MARKET ACTUALLY PERCEIVED THESE STATEMENTS, WE CAN SEE THAT THE STATEMENTS WERE CONCRETE ENOUGH THAT THEY WERE BOTH MATERIAL TO THE MARKET AND THAT THE MARKET WAS MISLEAD.

AFTER HEARING THE FALSE STATEMENTS, WE LIST A NUMBER OF ANALYSTS WHO MADE COMMENTS, SUCH AS UNITY IS DOING A GOOD JOB AT MITIGATING THE IMPACT FROM IDFA DEPRECATION.  UNITY CAN MORE EFFECTIVELY GENERATE VALUE THROUGH OUTCOME-BASED CAMPAIGNS.  THEY ARE DIRECTLY TALKING ABOUT AUDIENCE PINPOINTER'S OUTCOME-BASED CAMPAIGNS AND THEY BELIEVED IT WAS A SUCCESSFUL PRODUCT.

THE STEC CASE THAT WE CITE IN OUR BRIEF STANDS FOR THE PROPOSITION THAT PARTICULAR STATEMENTS MADE BY ANALYSTS UNDERSCORE THE PLAUSIBILITY AND THE REASONABLENESS OF THE FALSE IMPRESSIONS THAT PLAINTIFFS ALLEGE DEFENDANT'S STATEMENTS CAN BE.

THE COURT:  WHAT CASE WAS THAT AGAIN, COUNSEL?

MS. VILLEGAS:  THE STEC CASE, IT'S 2011 WESTLAW 2669217 AT STAR 8.

AND SO I JUST WANT TO TURN TO SCIENTER QUICKLY, YOUR HONOR, WHETHER DEFENDANT ACTED KNOWINGLY OR RECKLESSLY WHEN THEY MADE THESE STATEMENTS.

AND I WILL START WITH DEFENDANT LESTIYO BECAUSE I ACTUALLY THINK THAT'S AN EASY DEFENDANT TO START WITH.  SHE IS THE SENIOR VICE PRESIDENT AND THE GENERAL MANAGER OF THE OPERATES SOLUTION SEGMENT.  THAT'S THE SEGMENT THAT HAS AUDIENCE PINPOINTER AS THE MAIN TECHNOLOGY AND THE DRIVING FORCE BEHIND THE REVENUE THERE.

AND THE OPERATE DIVISION GENERATES 65 PERCENT OF REVENUE

FOR UNITY.  SHE TOUTS TO THE MARKET IN FEBRUARY OF 2022 JUST HOW GOOD THE CONTEXTUAL MODEL IS.  THE CONTEXTUAL MODEL IS REFERRING TO AUDIENCE PINPOINTER, THAT'S HOW THEY TALK ABOUT IT.  THAT'S STATEMENT 34.  AND BOTH CONFIDENTIAL WITNESSES 1 AND 2 TELL US IN DETAIL, AND THESE ARE NEW ALLEGATIONS FROM CONFIDENTIAL WITNESS 2, HOW LESTIYO RECEIVED REPORTS AND E-MAILS ABOUT THE CUSTOMER COMPLAINTS AND ATTENDED MEETINGS WHERE CONCERNS WERE DISCUSSED AND THAT THINGS WOULD GET HEATED AT THESE MEETINGS BECAUSE PEOPLE WERE UPSET ABOUT WHAT WAS HAPPENING WITH AUDIENCE PINPOINTER.  THESE ARE PARAGRAPHS 115 THROUGH 116.

THIS IS GOING ON THROUGHOUT THE ENTIRE CLASS PERIOD, WEEKLY AND MONTHLY, FROM MAY THROUGH THE END.  CONFIDENTIAL WITNESS 2 CONFIRMS THAT LESTIYO WAS AWARE OF THE DECLINING REVENUE GROWTH IN THE OPERATE SEGMENT BECAUSE UNITY IS AN ADS BUSINESS AND THEY WERE TRACKING EVERY PENNY.  THAT'S PARAGRAPH 133.  AND PROVIDING INFORMATION ABOUT REPORTS THAT DEFENDANT HAD ASSESS TO THAT CONTRADICTS THEIR PUBLIC STATEMENTS, THAT'S THE QUINTESSENTIAL WAY TO SHOW SCIENTER.

MOVING ON TO THE OTHER TWO INDIVIDUALS, WE WOULD ARGUE THAT YOU CAN CERTAINLY INFER THAT LESTIYO SHARED THESE REPORTS THAT IMPACTED HER DIVISION, SIGNIFICANTLY WITH THE CEO AND THE CFO.  AND THE CASE LAW SAYS YOU CAN INFER THIS.  THAT IS THE FITBIT CASE WHICH SAYS "THE COURT FINDS IT TO BE A COGENT AND COMPELLING ARGUMENT THAT INFORMATION REGARDING THE BASIC

FUNCTIONING OF A MAIN PRODUCT CONSTITUTING A LARGE PORTION OF FITBIT'S REVENUE STREAM, IF GIVEN TO ONE OF THE DEFENDANTS ALLEGED, WOULD ALSO HAVE BEEN KNOWN TO THE OTHER TWO INDIVIDUAL DEFENDANTS."

AND THIS COMMON SENSE INFERENCE IS JUST PART OF THE WHOLISTIC ANALYSIS THAT THE COURT WOULD NEED TO DO FOR SCIENTER, BECAUSE CASE LAW ALSO SUPPORTS THAT SCIENTER CAN BE INFERRED BY THE VERY FALSE STATEMENTS THAT THE DEFENDANTS, THEMSELVES, ARE MAKING.

THE NINTH CIRCUIT SAID IN THE REESE V. MALONE CASE, "WHERE DEFENDANTS MAKE MISSTATEMENTS ABOUT SPECIFIC MATTERS THEY PURPORT TO KNOW, IT'S UNCLEAR TO KNOW WHAT FURTHER FACTS PLAINTIFFS WOULD NEED TO PLEAD TO CREATE A STRONG INFERENCE THAT THEY HAD ACCESS TO THE INFORMATION THAT THEY ARE TALKING ABOUT PUBLICLY."

SPECIFICALLY ON DEFENDANT VISOSO, HE IS THE CFO, 65 PERCENT OF UNITY'S REVENUE COMES FROM THE OPERATE SEGMENT AND AUDIENCE PINPOINTER IS THE AD MONETIZATION PRODUCT.  HE TELLS THE MARKET HE'S KEENLY FOCUSED ON THE APPLE PRIVACY CHANGES.  THIS IS A DRAMATIC CHANGE THAT'S GOING TO UPEND THE INDUSTRY, AND AUDIENCE PINPOINTER, THAT SPECIFIC TECHNOLOGY IS THE MAIN DRIVER OF THIS EFFORT TO MAKE SURE APPLES'S CHANGES DON'T NEGATIVELY AFFECT THE COMPANY.

HIS OWN STATEMENTS SUPPORT THAT HE WAS FOCUSED ON THE REVENUE EFFECTS OF AUDIENCE PINPOINTER.  THOSE ARE STATEMENTS

10 AND 22, AND WHETHER AUDIENCE PINPOINTER WAS ACTUALLY WORKING.  HE SAYS IT IS, STATEMENTS 1 AND 20.  AND COMMENTS DIRECTLY ON CUSTOMER FEEDBACK ON AUDIENCE PINPOINTER, THAT THEY ARE GETTING STRONG FEEDBACK, STATEMENTS 3 AND 2021.  HE MADE ALL THESE STATEMENTS WHILE WE ALLEGE THE AUDIENCE PINPOINTER TECHNOLOGY WAS FAILING, WHILE CUSTOMERS WERE COMPLAINING AND WHILE GROWTH IN THE OPERATING SEGMENT OR REVENUE GROWTH WAS DECLINING.

SIMILAR ARGUMENTS FOR DEFENDANTS RICCITIELLO, HE IS THE CEO.  HE MAKES STATEMENTS LIKE, WE HAVE GOT TOOLS LIKE AUDIENCE PINPOINTER, THEY ALLOW ADVERTISERS TO GET A GUARANTEED RETURN REGARDLESS OF WHAT'S HAPPENING OR CHANGES OF ATTRIBUTION. THAT'S WHAT WE ARE DELIVERING.

THAT'S STATEMENT 17.  EXCEPT WE BELIEVE CONFIDENTIAL WITNESSES SUPPORT THAT THAT WASN'T WHAT THEY WERE DELIVERING.

STATEMENT 9, WE ARE CONSTANTLY FOCUSED ON IT, THE MONETIZATION PLATFORM IS PART OF OPERATE, IS GOING TO CONTINUE TO WIN.

STATEMENT 11, HE TALKS ABOUT OPERATE MONETIZATION WHICH IS AUDIENCE PINPOINTER, POSTING STRONG GROWTH, AND HOW THE ALGORITHM CAN DELIVER THE BEST ROI FOR ITS CUSTOMERS.  THAT'S STATEMENT 13.

AND SO JUST LIKE WITH VISOSO AND LESTIYO, RICCITIELLO CAN BE IMPUTED TO HAVE ACCESS TO THE INFORMATION ABOUT AUDIENCE PINPOINTER BECAUSE HE'S MAKING STATEMENTS ABOUT IT.

JUST QUICKLY, A COUPLE OF OTHER ALLEGATIONS THAT SUPPORT SCIENTER. WE BELIEVE THE CORE OPERATIONS SUPPORTS SCIENTER HERE. CASES IN THE NINTH CIRCUIT SUPPORT THAT THIS CAN BE AN INDEPENDENT BASIS TO INFER SCIENTER, GIVEN THE IMPORTANCE OF AUDIENCE PINPOINTER TO UNITY BOTTOM LINE, WHICH DEFENDANTS EFFECTIVELY CONCEDE IT WAS IMPORTANT, IT WOULD BE ABSURD TO SUGGEST THAT MANAGEMENT WAS WITHOUT KNOWLEDGE OF THE CHALLENGES THAT AUDIENCE PINPOINTER FACED.

AND I JUST WANT TO BRING TO THE COURT'S ATTENTION THE SNAP DECISION, THIS IS A DECISION THAT WE SUBMITTED AT ECF 153-1, DECIDED BY THE COURT OF APPEALS ON DECEMBER 20TH, 2024, AND JUDGE DAVILA DID NOT HAVE THE BENEFIT OF THIS DECISION, NOR DID HE HAVE THE BENEFIT OF THE ADDITIONAL ALLEGATIONS, PARTICULARLY THOSE FROM CONFIDENTIAL WITNESS 2, BUT I THINK THIS CASE IS EXTREMELY INSTRUCTIVE AND THE FACTS ARE SO SIMILAR TO OURS.

IT INVOLVED -- SNAP IS, YOU KNOW, SNAPCHAT, IT'S A COMPANY THAT SELLS ADVERTISING. AND THERE WAS A LOT OF CONCERN FOR THEIR BUSINESS AS WELL WHEN APPLE ANNOUNCED THEIR PRIVACY CHANGES. AS A WAY TO MITIGATE THESE RISKS, THEY PUSHED OUT AN APPLE PRODUCT CALLED SCAN WHICH IS SIMILAR TO AUDIENCE PINPOINTER IN THAT ITS PURPOSE WAS TO HELP ITS CUSTOMERS DELIVER BETTER ADVERTISING WITHOUT THE USE OF DEVICE IDENTIFIERS OR IDFA'S. AND THE FALSE STATEMENT IN THAT CASE IS ADVERTISERS, ESSENTIALLY THEIR CUSTOMERS, THAT REPRESENT A MAJORITY OF OUR DIRECT RESPONSE ADVERTISING REVENUE, HAVE

SUCCESSFULLY IMPLEMENTED SCAN FOR THEIR SNAP CAMPAIGNS.

AND WE THINK THAT'S REALLY COMPARABLE TO STATEMENTS THAT WERE MADE IN THIS CASE, LIKE THE CONTEXTUAL MODEL AUDIENCE PINPOINTER IS WORKING WELL, OR THAT CUSTOMER FEEDBACK WAS STRONG OR THAT THE OPTIMIZATION SYSTEM, AUDIENCE PINPOINTER, CAN DELIVER THE BEST RETURNS FOR OUR CUSTOMERS.

THE COURT:  WHAT WERE THE DEFICIENCIES OF THE PRODUCT IN THE SNAP CASE?

MS. VILLEGAS:  YES.  SO ESSENTIALLY THERE, THE CONFIDENTIAL WITNESSES ALLEGED THAT THE CUSTOMERS IMMEDIATELY EXPERIENCED NUMEROUS ISSUES, INCLUDING LOSS OF DATA, SIGNIFICANT DELAYS IN RECEIVING DATA AND THE INABILITY TO OBTAIN DATA, SUCH AS A SIZE OF A USER'S PURCHASE AFTER CLICKING AN AD.

SO IT'S VERY SIMILAR, THEY HAD PROBLEMS --

THE COURT:  SO WHERE ARE THOSE MORE SPECIFIC ALLEGATIONS IN PLAINTIFF'S COMPLAINT?

MS. VILLEGAS:  SO OUR SPECIFIC ALLEGATIONS AS TO WHAT THE PROBLEMS WERE AT PARAGRAPHS 113 AND 114, 120 AND 121, WHICH IS THAT THERE WERE PROBLEMS WITH THE --

THE COURT:  LET ME PULL UP THE COMPLAINT.  ONE MOMENT.

OKAY.  SO WE HAVE CONFIDENTIAL WITNESS 2 FOR THE 113 AND 114?

MS. VILLEGAS:  YEP.

THE COURT:  AND THEN 120 AND 121?

MS. VILLEGAS:  YES.

THE COURT:  OKAY.  SO CW1 AND 2.

MS. VILLEGAS:  YES, YOUR HONOR.

THE COURT:  GO AHEAD.

MS. VILLEGAS:  SO IF YOU LOOK AT PARAGRAPH 113, CONFIDENTIAL WITNESS 2 TALKS ABOUT THE ACCURACY OF THE AUDIENCE PINPOINTER, ITS ABILITY TO ACCURATELY DELIVER ADS.

THE COURT:  I MEAN, WHAT IT SAYS IS THE ACCURACY OF THE AUDIENCE PINPOINTER, BUT THERE'S NOT THE LEVEL OF SPECIFICITY THAT YOU ARE TALKING ABOUT, PARTICULARITY WHICH I SEE IN THE SNAP DECISION.

THOSE ARE PART OF MY PROBLEMS WHICH I REALLY DO WANT TO FOCUS ON THE INITIAL PART OF YOUR ARGUMENT.  I WANT TO SAVE YOU -- WELL, THIS IS YOUR ARGUMENT AT THIS POINT SO LET'S TURN BACK TO THE FIRST PART OF YOUR ARGUMENT AND THE SPECIFICITY. THAT'S MY CONCERN IS -- IS WHETHER OR NOT PARTICULARITY WAS MET, WHETHER IT'S ABOUT THAT PRODUCT, WHETHER IT WAS ABOUT THE COMPLAINTS, BECAUSE THAT IS SORT OF THE BASE OF THE HOUSE, THE FOUNDATION OF THE HOUSE, RIGHT?  AND SO I'M TRYING TO -- LOOKING AND TRYING TO COMPARE WITH THESE OTHER CASES WHETHER OR NOT THE PARTICULARITY HAS BEEN REACHED.

AND THEN MY SECOND QUESTION TO YOU WHICH I WANTED TO MAKE SURE WE GET TO IS WHAT UNITY ENDED WITH, WHICH WAS IF THE COURT WERE TO ADOPT ITS TENTATIVE, SHOULD IT BE WITH OR WITHOUT

LEAVE?  AND IF IT'S WITH LEAVE, WHAT COULD PLAINTIFFS ADD?

MS. VILLEGAS:  YEAH.  I WILL START WITH THAT FIRST, YOUR HONOR.

WE WOULD ASK THAT LEAVE TO AMEND BE GRANTED.  WE BELIEVE WE PROVIDED SUFFICIENT DETAIL, BUT IF THE ISSUE WITH THE COURT IS WE JUST NEED MORE DETAIL ON WHAT THE ISSUE WITH AUDIENCE PINPOINTER WAS, WE WOULD ENDEAVOR TO GET THAT.

SO WE WOULD ASK FOR PERHAPS 21 OR 30 DAYS FOR US TO DETERMINE IF WE WOULD BE ABLE TO ACTUALLY AMEND TO SATISFY WHATEVER IT IS THE COURT BELIEVES IS LACKING.

AND THEN GOING BACK TO THE SPECIFICITY ON THE ISSUE WITH AUDIENCE PINPOINTER.  I MEAN, I THINK WHAT --

THE COURT:  SPECIFICITY AS TO IT ALL, WHETHER IT'S THE COMPLAINTS OR THE DIFFERENT POINTS WHICH WERE RAISED BY JUDGE DAVILA.  AND I HATE TO REFER TO IT SPECIFICALLY BUT I WILL JUST SAY THE FIRST ORDER OF DISMISSAL.

MS. VILLEGAS:  RIGHT.

SO I GUESS TWO THINGS.  FIRST IS I THINK THAT WE DON'T HAVE TO PROVIDE SMOKING GUN EVIDENCE AT THIS STAGE.  CERTAINLY IT'S A FRAUD CASE AND WE DO HAVE TO PROVIDE PARTICULARIZED ALLEGATIONS AND WE BELIEVE WE HAVE DONE SO.

WE PROVIDED THE DATE WHEN THESE COMPLAINTS STARTED, WE PROVIDED INFORMATION ABOUT THE TYPES OF COMPLAINTS THEY WERE RECEIVING.  WE PROVIDED THAT THE COMPLAINTS SPIKED UP AND THAT THEY REMAINED ELEVATED.

WE ALSO, YOUR HONOR, JUST BASED ON THE INFORMATION THAT CAME TO LIGHT, WE SEE THAT THE NEGATIVE EFFECTS OF AUDIENCE PINPOINTER NOT WORKING DID HAVE A NEGATIVE EFFECT ON THE COMPANY IN TERMS OF REVENUE.  SO THAT JUST BEARS OUT WHAT THE CONFIDENTIAL WITNESSES ARE TELLING US INTERNALLY, PEOPLE DON'T WANT TO USE THE PRODUCT TO, YES, THAT'S WHAT HAPPENS, THERE IS A DECLINE IN REVENUE, AT THE END OF THE CLASS PERIOD THE DEFENDANTS COME OUT AND SAY WE HAVE PROBLEMS WITH AUDIENCE PINPOINTER, YOU KNOW, THE ACCURACY WASN'T THERE, AND THEN THEY TURN AROUND AND THEY PURCHASE OR THEY MERGE WITH A COMPANY, IRONSOURCE, THAT'S ONE OF THE COMPANIES THAT OUR CONFIDENTIAL WITNESS TELLS US THAT UNITY'S CLIENTS WAS LEAVING FOR, THEY MERGE WITH IRONSOURCE BECAUSE THEY CAN'T FIX THE AUDIENCE PINPOINTER PROBLEMS.

AND SO I THINK THAT'S ANOTHER ALLEGATION THAT YOU CAN CONSIDER ALONG WITH THE ALLEGATIONS FROM CONFIDENTIAL WITNESS 1 AND 2 ON THIS ISSUE.

BUT GOING BACK TO THE SPECIFICITY ON THE COMPLAINTS, YOUR HONOR, I WOULD JUST REITERATE WHAT CONFIDENTIAL WITNESS 1 TELLS US THAT THERE WERE THOUSANDS OF COMPLAINTS IN THAT THREE MONTH PERIOD THAT THEY DID THE LOOK BACK ON.  CONFIDENTIAL WITNESS 2 TELLS US THAT, YES, STARTING IN APRIL 2021, THE COMPLAINTS SPIKED UP AND THEY STAYED THERE THROUGHOUT THE CLASS PERIOD.

AND IT MAKES SENSE BECAUSE ULTIMATELY THAT IS WHAT LEAD TO

THE COMPANY REDUCING ITS GUIDANCE AND POSTING LOWER REVENUE FOR THE QUARTER.

THE COURT:  OKAY.  THANK YOU.

MS. VILLEGAS:  THANK YOU, YOUR HONOR.

MS. HILL:  THANK YOU, YOUR HONOR.

I WILL JUST RESPOND QUICKLY TO WHAT COUNSEL SAID.

SO YOU ARE ABSOLUTELY RIGHT TO FOCUS ON PARTICULARITY.

THE COURT:  I HAVE BEEN WRONG PLENTY OF TIMES AS WELL.

MS. HILL:  THIS TIME I WOULD AGREE WITH YOU ON ALL POINTS, YOU ARE HEADED DEFINITELY IN THE RIGHT DIRECTION, FROM MY PERSPECTIVE.

AND WHAT YOU SAID AND IS I THINK EXACTLY WHAT JUDGE DAVILA DID WHICH IS TO FOCUS ON THE PLEADING STANDARD.  SECURITIES LITIGATION IS NOT YOUR RUN OF THE MILL REGULAR CASE, THIS IS A CASE THAT IS SUBJECT TO THE HEIGHTENED PLEADING REQUIREMENTS OF THE PSLRA WHICH REQUIRES PLEADING WITH PARTICULARITY.

WE OFTEN CITE, AND JUDGE DAVILA ALSO CITED THE LANGUAGE FROM REED WRIGHT WHICH SAYS THAT YOU MUST PLEAD FACTS WHICH ARE NECESSARILY INCONSISTENT WITH WHAT IS SAID TO THE PUBLIC.

AND HERE, THIS IS IMPORTANT, RIGHT, WHAT THE PLAINTIFFS ARE SAYING IS UNITY DEFENDANTS COMMITTED FRAUD.  THEY SAID ONE THING TO INVESTORS, BUT REALLY BEHIND THE SCENES SOMETHING ELSE WAS HAPPENING, RIGHT.  THEY ARE SAYING THERE IS A DISCONNECT BETWEEN WHAT THE COMPANY SAID PUBLICLY AND WHAT HAPPENED

PRIVATELY.

IN THIS CASE, THE COMPANY SAID IN MAY 2022 AT THE END OF THE CLASS PERIOD THAT THEY DID HAVE PROBLEMS WITH AUDIENCE PINPOINTER, AND THEY POINTED TO A SPECIFIC TIME WHEN THOSE PROBLEMS AROSE, WHICH WAS FEBRUARY AND MARCH OF 2022.

SO THE COMPANY HAS ALREADY SAID, WE'VE GOT SPECIFIC PROBLEMS, HERE ARE WHEN THESE SPECIFIC PROBLEMS AROSE, FEBRUARY AND MARCH OF 2022.  SO THE PLAINTIFFS HAVE TO SHOW THAT THE TIMELINE THAT THE COMPANY ANNOUNCED WAS A LIE, THAT THE COMPANY JUST MADE THIS UP, IT WAS A COMPLETE FABRICATION, AND THE REAL TIMELINE OF EVENTS OF WHEN THE PROBLEMS THAT ARE ANNOUNCED IN MAY 2022 ACTUALLY AROSE IN AN ENTIRE YEAR EARLIER IN MAY 2021.

SO THE TIMELINE HERE IS REALLY IMPORTANT.  WE CAN'T JUST HAVE THE VAGUE ALLEGATIONS TO SUPPORT THEIR CHRONOLOGY BECAUSE THEY HAVE A CHRONOLOGY OR ALLEGATIONS THAT DEPEND ON A VERY SPECIFIC CHRONOLOGY OF EVENTS.  THEIR CHRONOLOGY SAYS PROBLEMS STARTED IN MAY 2021 AND YOU DIDN'T DISCLOSE THEM UNTIL MAY 2022.  DOES IT MATTER THAT YOU SAID THOSE PROBLEMS AROSE IN FEBRUARY/MARCH OF 2022?  IN REALITY THOSE PROBLEMS AROSE MANY, MANY MONTHS EARLIER IN MAY 2021.

AND SO WHEN WE DRILL DOWN ON THAT TIMELINE AND WE LOOK, WELL, HOW ARE THEY SUPPORTING THEIR ALLEGATIONS?  AND HERE OF COURSE THEY DO WHAT MANY PLAINTIFFS LAWYERS DO IN SECURITIES CLASS ACTIONS, THEY RELY ON CONFIDENTIAL WITNESSES.

THIS IS THE NORM, RIGHT, BECAUSE THEY HAVE TO ALLEGE WITH

PARTICULARITY, SPECIFIC FACTS TO SUPPORT THEIR ALLEGATIONS. AND HOW DO THEY KNOW WHAT IS HAPPENING INSIDE THE COMPANY AND HOW DO THEY KNOW IF THE COMPANY IS ACTUALLY LYING?  THEY HAVE GOT TO FIND PEOPLE THAT CAN COMMENT ON WHAT'S ACTUALLY HAPPENING BEHIND CLOSED DOORS.

AND SO THESE PLAINTIFFS, TWO AND A HALF YEARS AGO IT STARTED, THEY WENT OUT THERE AND THEY CANVASSED AND LOOKED FOR FORMER EMPLOYEES WHO COULD SPEAK TO WHAT'S HAPPENING BEHIND CLOSED DOORS, WHAT'S ACTUALLY HAPPENING.

THE COURT:  MS. HILL, WE HAVE AMAZING COURT REPORTERS, BUT YOU MAY NEED TO SLOW DOWN JUST A LITTLE BIT. SHE'S NOT ASKING ME TO, I JUST FEEL BAD FOR HER.  MADAM COURT REPORTER.

MS. HILL:  FAIR ENOUGH.  I WILL SLOW DOWN.  THANK YOU.

SO THEY ARE GOING OUT AND THEY ARE FINDING WITNESSES, FORMER EMPLOYEES WHO CAN SPEAK TO WHAT IS HAPPENING BEHIND CLOSED DOORS AT THE COMPANY.  AND THEY DID THEIR DILIGENCE AND THEY CAME UP INITIALLY WITH FIVE, EVENTUALLY SEVEN FORMER EMPLOYEES, AND WHAT ARE THEY TASKED WITH?  THEY ARE TASKED WITH REVEALING THE LIE, RIGHT, YOU WENT OUT THERE AND YOU SAID ONE THING, BUT IN FACT SOMETHING ELSE IS HAPPENING BEHIND CLOSED DOORS.

AND AS JUDGE DAVILA POINTED OUT, THE FIRST TIME THEY DIDN'T HAVE ALLEGATIONS THAT SUPPORTED THE ALLEGED FRAUD, THE

LIE, DURING THE CLASS PERIOD. THEY HAD CONFIDENTIAL WITNESSES WHO SPOKE TO PROBLEMS MONTHS PRIOR TO THE CLASS PERIOD, THEY HAD CONFIDENTIAL WITNESSES WHO SPOKE TO PROBLEMS AFTER THE CLASS PERIOD. BUT THE ACTUAL YEAR-LONG CLASS PERIOD, THEY DIDN'T HAVE ANYONE THAT WAS POINTING TO THE SPECIFIC PROBLEMS, AGAIN, PROVIDING PARTICULARIZED ALLEGATIONS OF SPECIFIC PROBLEMS DURING THE CLASS PERIOD. AND THAT WAS DISPOSITIVE AND THE JUDGE DISMISSED ON THOSE GROUNDS.

AND SO THEN THE PLAINTIFFS HAD ANOTHER OPPORTUNITY, ANOTHER BITE AT THE APPLE AND THEY WENT OUT THERE AND THEY SAID OKAY, WE'VE GOT TO FIND MORE STUFF. AND WHAT DO THEY FIND? THEY FOUND TWO MORE CONFIDENTIAL WITNESSES, NEITHER OF WHICH SAY ANYTHING ABOUT DURING THE CLASS PERIOD, AND THEY ADD ADDITIONAL ALLEGATIONS.

THE COURT: WELL, THEY ARE POINTING TO THE COMPLAINTS.

AND I HAVE A COUGH DROP IN, SO I DON'T MEAN TO SOUND LIKE I HAVE A MOUTHFUL OF MARBLES, BUT WHAT PLAINTIFFS ARE RELYING ON RIGHT NOW IS THIS ELEVATED COMPLAINT DURING THE -- THEY ARE SAYING FROM MAY TO MAY, THERE WERE ELEVATED COMPLAINTS, BUT IS THAT ENOUGH?

MS. HILL: RIGHT.

CW2 IS THE PERSON WHO SPEAKS TO ELEVATED COMPLAINTS, BUT OF COURSE THERE IS NO ALLEGATION OF ONE, THE BASELINE, RIGHT, WHAT WAS THE LEVEL OF COMPLAINTS PRIOR TO THIS.

AS THE COMPLAINT ALLEGES, INITIALLY THIS PRODUCT WAS LAUNCHED -- ACCORDING TO THE COMPLAINT, A BETA VERSION, THE WIDESPREAD LAUNCH OF THE PRODUCT COINCIDES WITH THE BEGINNING OF THE CLASS PERIOD, IT'S ONE MONTH EARLIER, SO IT'S APRIL 2021 IS WHEN THE COMPLAINT ALLEGES THAT THERE IS WIDESPREAD LAUNCH OF THE PRODUCT.

SO I WOULD EXPECT THAT WHEN YOU GO FROM BETA TO WIDESPREAD, THERE WOULD BE AN INCREASE IN COMPLAINTS, BUT WHAT WAS THAT VOLUME OF COMPLAINTS?  WHAT IS THE ACTUAL VOLUME? THAT IS NOT ACTUALLY ALLEGED IN THE COMPLAINT.  THERE ARE NO ALLEGATIONS OF THE SPECIFIC VOLUME OF COMPLAINTS.  THE ONE REFERENCE THEY HAVE IS CW1, WHO WAS OF COURSE IN THE PRIOR COMPLAINT, AND HE REFERENCES THOUSANDS OF CUSTOMER COMPLAINTS.

LET ME BE CLEAR BECAUSE I THINK THIS IS IMPORTANT, SO CW1 WHICH IS THE ONLY REPORT THAT'S MENTIONED IN THE COMPLAINT, WHAT HE REFERS TO IS THIS SENTIMENT ANALYSIS.  THE SENTIMENT ANALYSIS IS NOT SPECIFIC TO AUDIENCE PINPOINTER, IT IS A SENTIMENT ANALYSIS FOR THE OPERATE DEPARTMENT, MORE BROADLY, AND HE SAYS THAT WE ARE SEEING THOUSANDS OF COMPLAINTS.

THERE IS NO ALLEGATIONS OF THE SPECIFIC TYPES OF COMPLAINTS THAT THEY ARE FACING, RIGHT, WHO COMPLAINED?  THAT IS NOT IN THERE.  THERE IS NO ALLEGATION OF ANY -- NO CUSTOMER IS NAMED ONE TIME, RIGHT.  ARE THESE THE COMPANY'S LARGEST CUSTOMERS?  THERE IS NO ALLEGATION ANYWHERE IN THE COMPLAINT THAT THESE --

THE COURT:  PLAINTIFFS ARE GOING TO SAY, WELL THEY ARGUED IT WAS FROM -- THAT CW2 -- OR THAT CW2 WAS POINTING TO -- IT CAME FROM ALL AREAS OF -- ALL INDUSTRIES, RIGHT.  SO SMALL BUSINESS, LARGE BUSINESS, ET CETERA, ET CETERA.

MS. HILL:  SO I WOULD SAY THIS GENERAL VAGUE ALLEGATION OF LOTS OF CUSTOMER COMPLAINTS IS NOT SUFFICIENT TO MEET THEIR PLEADING STANDARD UNDER THE PSLRA.  I WILL POINT YOU TO TWO CASES WE CITE IN OUR BRIEFING.

THE COURT:  I WAS GOING TO ASK, WHAT ARE YOUR CASES, COUNSEL?

MS. HILL:  SO THE NETFLIX CASE IS THE SAME THING, RIGHT.  GENERAL ALLEGATIONS OF COMPLAINTS, AND THE COURT SAID NOPE, THAT'S NOT ENOUGH, YOU'VE GOT TO HAVE PARTICULAR ALLEGATIONS OF COMPLAINTS.  BARE ESCENTUALS IS THE SAME THING, BOTH OF THOSE CASES DEAL WITH CUSTOMER COMPLAINTS AND THE LEVEL OF SPECIFICITY THAT'S REQUIRED WHEN YOU ARE ALLEGING CUSTOMER COMPLAINTS.

AND THAT'S NOT WHAT WE HAVE HERE, WE HAVE WHAT JUDGE DAVILA SAID THE FIRST TIME WHICH IS VAGUE ALLEGATIONS OF CUSTOMER COMPLAINTS.

CUSTOMERS COMPLAIN, CUSTOMERS PARTICULARLY COMPLAIN ABOUT NEW TECHNOLOGY.  WHEN YOU GO FROM BETA TO WIDESPREAD LAUNCH, THERE WILL BE COMPLAINTS.  THE QUESTION HERE IS WERE INVESTORS MISLEAD BECAUSE THE COMPANY DID NOT REVEAL SOME LARGER WIDESPREAD TECHNICAL PROBLEM THAT WAS KNOWN DURING THAT CLASS

PERIOD DESPITE LATER SAYING THAT THOSE ISSUES AROSE IN FEBRUARY AND MARCH 2022?

SO AGAIN, THE FOCUS IS REALLY WHEN DID THE PROBLEMS ARISE THAT ARE LATER DISCLOSED?  AND THE COMPLAINT REALLY DOES NOT GIVE US THAT INFORMATION, INSTEAD WHAT IT TELLS US IS VAGUELY, CUSTOMERS WERE COMPLAINING.

AND AGAIN, JUST THE GENERAL ALLEGATION OF CUSTOMER COMPLAINTS IS NOT ENOUGH, THERE HAS TO BE SPECIFIC ALLEGATIONS, WHAT THE PROBLEMS WERE, WHEN THEY AROSE, HOW THEY IMPACTED REVENUE, THAT'S WHAT WE WOULD HAVE EXPECTED TO SEE, AND THAT IS NOT HERE.

AND JUST BRIEFLY, IF THEY HAVE IT, THEY WOULD HAVE PUT IT IN, RIGHT.  THE FACT THAT IT'S NOT IN THE SECOND AMENDED COMPLAINT SHOWS THEY DON'T HAVE IT.  AND SO THE IDEA THAT THEY COULD GO OUT THERE AND FIND MORE INFORMATION TO TRACK THIS DOWN AT THIS STAGE, TWO AND A HALF YEARS INTO THE LITIGATION, THAT JUST STRIKES ME AS UNREASONABLE GIVEN THE VERY LONG TIME THAT HAS PASSED SO FAR.

THE COURT:  SO THE LATTER PART OF THE LAST MINUTE OR TWO OF YOUR ARGUMENTS HAS BEEN FOCUSING ON WHEN THEY KNEW, SO THE FEBRUARY/MARCH 2022 TIME FRAME VERSUS DID THEY KNOW EARLIER POST-BETA TESTING AND RELEASE?  I'M THINKING THIS THROUGH, SO I WOULD APPRECIATE YOUR THOUGHTS, BUT DOES THAT GO TO -- MORE TO SCIENTER OR DOES THAT GO TO THIS PARTICULARITY LEVEL WHERE THE COURT IS STRUGGLING WITH IT?  I'M STRUGGLING WITH IT IN TERMS

OF TRYING TO FIGURE OUT THE BEST DECISION.

MS. HILL:  I THINK IT SPEAKS TO BOTH, BUT I WILL START WITH FALSITY.

THE PLAINTIFF'S ENTIRE THEORY RESTS ON THE NOTION THAT THERE WERE UNDISCLOSED WIDESPREAD DEFECTS DURING THE CLASS PERIOD.  SO THEY NEED ALLEGATIONS, PARTICULAR ALLEGATIONS THAT SUPPORT THAT, RIGHT.  THEY NEED TO SHOW WIDESPREAD TECHNICAL DEFECTS DURING THE CLASS PERIOD.  AND THAT IS EXACTLY WHAT'S MISSING.  IT WAS MISSING THE LAST TIME AND IT'S MISSING AGAIN.

WE -- IN OUR MOTION, WE TRIED TO MAKE THEIR JOB EASIER BY POINTING TO EXACTLY WHAT ARE THE NEW ALLEGATIONS THE PLAINTIFFS HAVE ALLEGED IN THE SECOND AMENDED COMPLAINT THAT WEREN'T IN THE FIRST AMENDED COMPLAINT.

SO REALLY IT'S ONLY A HANDFUL OF THINGS.  SO THERE ARE A HANDFUL OF NEW ALLEGATIONS FROM CW2.  I DON'T THINK THAT THEY ARE PARTICULARLY COMPELLING BUT I'M HAPPY TO TALK THROUGH THEM.

SO ONE OF THEM IS THIS IDEA OF VARYING INCREMENTS, CUSTOMERS COMPLAINED IN VARYING INCREMENTS OVER THE YEARS OR OVER THIS TIME PERIOD.  WE DO NOT VIEW THAT AS COMPELLING OR SUFFICIENTLY SPECIFIC TO SUPPORT THEIR PLEADING BURDEN.

THEY ALSO MAKE A REFERENCE TO A MASSIVE INCREASE IN COMPLAINTS WHICH HE RECALLED INCREASED FIVE-FOLD.  AGAIN, NO BASELINE IS PROVIDED SO IT'S IMPOSSIBLE TO KNOW WHETHER A FIVE-FOLD INCREASE IN COMPLAINTS OR A MASSIVE INCREASE IN COMPLAINTS FROM THE BETA VERSION TO THE LAUNCH IS IN FACT

DISPOSITIVE GIVEN THAT THEY HAVEN'T ALLEGED ANY BASELINE.

AND AGAIN, IF THEY HAD A BASELINE, THEY WOULD HAVE ALLEGED A BASELINE, SO WE DON'T THINK IT'S THERE.

THE COURT:  I THINK PLAINTIFF'S COUNSEL JUST PROPOSED ONE DURING ARGUMENT WHICH WAS THERE WERE ONLY ABOUT A THOUSAND CUSTOMERS, AND I'M TRYING TO REMEMBER IF THIS WAS IN THE COMPLAINT, BUT THAT THERE WAS APPROXIMATELY A THOUSAND CUSTOMERS SO THERE'S A THOUSAND COMPLAINTS, IT'S SIGNIFICANT.

MS. HILL:  I DO NOT BELIEVE THAT ALLEGATION IS IN THE COMPLAINT.  I HEARD HER SAY THAT AND I WAS LOOKING FOR IT WONDERING WHERE THAT SPECIFICALLY IS, MAYBE SHE CAN POINT US TO IT.

MS. VILLEGAS:  I CAN, YOUR HONOR.  IT IS ACTUALLY IN THE FALSE STATEMENTS.

MS. HILL:  IN THE FALSE STATEMENTS?

MS. VILLEGAS:  YES.

MS. HILL:  CAN YOU GIVE US A COMPLAINT PARAGRAPH?

MS. VILLEGAS:  SURE.  IT'S STATEMENT 28.  VISOSO IS TALKING ABOUT SINCE BECOMING A PUBLIC COMPANY, UNITY HAS AVERAGED 43 PERCENT REVENUE GROWTH.  CUSTOMERS CONTRIBUTING A 100,000 MORE OF REVENUE IN THE TRAILING 12 MONTHS INCREASED 33 PERCENT, FROM 793 CUSTOMERS AS OF DECEMBER 31, 2020 TO 1,052 AS OF DECEMBER 31, 2021.

THAT'S AT PARAGRAPH 189.  IT'S ALSO IN THEIR 10-K WHICH IS INCORPORATED BY REFERENCE, I BELIEVE IT WAS DEFENDANT'S

EXHIBIT 7.

THE COURT: THANK YOU. I WILL GIVE COUNSEL -- WHENEVER YOU ARE READY, MS. HILL. I KNOW YOU ARE LOOKING IT UP.

MS. HILL: I'M SORRY, COUNSEL, YOU QUOTED PARAGRAPH 189?

MS. VILLEGAS: HOLD ON A SECOND, I'M JUST LOOKING AT OUR STATEMENT CHART. IT'S STATEMENT 28.

MS. HILL: IF YOU COULD GIVE ME THE PARAGRAPH NUMBER. SORRY. I'M LOOKING AT YOUR AMENDED COMPLAINT.

MS. VILLEGAS: I'M LOOKING AT OUR CHART IN APPENDIX A. LET ME SEE IF I COULD ACTUALLY CONNECT IT TO THE COMPLAINT. BUT IT IS ALSO IN EXHIBIT 7 WHICH DEFENDANT SUBMITTED WHICH IS THEIR FORM 10-K, BUT I WILL WORK TO TRACK IT DOWN RIGHT NOW. IT LOOKS LIKE IT'S IN THE Q4 2021 FINANCIAL RESULTS PRESS RELEASE, EXHIBIT 5 ALSO.

MS. HILL: I WILL HAVE TO LOOK AT THAT. I'M SORRY I DON'T HAVE THAT RIGHT THERE AT MY FINGERTIPS, THE SPECIFIC REFERENCE TO THE NUMBER OF CUSTOMERS, BUT I WILL RESPOND TO SAY THAT EVEN IF THERE ARE A THOUSAND COMPLAINTS OVER THE ENTIRE OPERATE DIVISION DURING THIS TIME PERIOD, RIGHT, BECAUSE THAT'S WHAT WE ARE TALKING ABOUT, THESE COMPLAINTS ARE NOT ALLEGED TO BE SPECIFIC TO AUDIENCE PINPOINTER, THEY ARE FOR OPERATE MORE BROADLY.

WE DO NOT KNOW THE NATURE OF THESE COMPLAINTS. THE

COMPLAINTS COULD BE, I TRIED TO CALL CUSTOMER SERVICE AND THEY DIDN'T PICK UP RIGHT AWAY, RIGHT?  WE DON'T KNOW ANYTHING ABOUT THE NATURE OF THESE COMPLAINTS, AND CERTAINLY THERE ARE NOT ALLEGATIONS FROM CW1 OR ANY OF THE CW'S THAT WOULD SUPPORT THAT THESE SPECIFIC COMPLAINTS ARE THE TECHNICAL ISSUES THAT ARE LATER DISCLOSED.

THE COURT:  OKAY.

SO I MEAN, JUST GOING THROUGH THE DIFFERENT -- I KNOW YOU DON'T WANT TO GO THROUGH LINE BY LINE, AND I DON'T -- THE PAPERS DID A GOOD JOB OF POINTING OUT THE CHANGES, BUT LET'S AT LEAST TRY TO GO THROUGH THE PRIMARY ARGUMENTS THAT WERE RAISED IN TERMS OF THE ADDITIONS.

SO ONE WAS THAT THERE WAS INCREASED LEVEL OF COMPLAINTS AND THAT THEY REMAINED SIGNIFICANT AND THAT THERE'S SIGNIFICANCE IN THAT.

COUNSEL, DID YOU HAVE A CITE?

MS. VILLEGAS:  YOUR HONOR, I BELIEVE IT'S ACTUALLY IN THE PRESS RELEASE, EXHIBIT 5, AND THEN THE EXHIBIT 7 THAT DEFENDANTS SUBMITTED.  SO FOR SOME REASON, NO IT'S NOT IN THE COMPLAINT, BUT IT'S INCORPORATED BY REFERENCE, I THINK THAT'S AN EASY ANSWER.

THE COURT:  OKAY.  WE ARE GOING TO CONTINUE.

MS. HILL:  THE LANGUAGE THAT COUNSEL POINTED TO AGAIN TO SUPPORT THE ALLEGATION THAT CW2 IS NOT QUITE THE SMOKING GUN BUT A HELPFUL PIECE OF FULFILLING THEIR PARTICULARITY

OBLIGATIONS, SHE POINTS TO SOMETHING THAT SHE CONTENDS IS SPECIFIC WHICH IS THAT CUSTOMERS COMPLAIN ABOUT ISSUES WITH THE ACCURACY OF THE AUDIENCE PINPOINTER TOOL WHICH WAS NOT WORKING AS INTENDED.  AND THAT WAS PARAGRAPH 113 OF THE COMPLAINT.  AND THAT IS A NEW ALLEGATION THAT WASN'T IN THE PRIOR COMPLAINT.

WE WOULD SAY THAT IS STILL JUST AS VAGUE, JUST AS UNCLEAR AS THE PRIOR ALLEGATIONS FROM CW2, IT STILL DOES NOT SAY WHO SPECIFICALLY WAS COMPLAINING, IT DOESN'T NAME A SINGLE CUSTOMER THAT WAS COMPLAINING.  IT DOESN'T SAY WHAT THE ISSUES -- WHAT THE ACCURACY OF THE AUDIENCE PINPOINTER TOOL WERE, SIMPLY THAT IT WAS NOT WORKING AS INTENDED.

WE CITED A NUMBER OF CASES IN OUR BRIEFING THAT POINT TO TOOLS, PRODUCTS, NOT WORKING AS INTENDED, AND THAT VAGUE ALLEGATION THAT THINGS AREN'T GOING AS WELL AS YOU WANTED, OUR PRODUCTS AREN'T PERFECT, RIGHT, DURING THIS TIME PERIOD.  THAT IS NOT SUFFICIENT TO SUPPORT THE PARTICULARITY OBLIGATIONS THAT ARE SET FORTH BY THE NINTH CIRCUIT.

SO I WILL GIVE YOU A FEW CASES, RONCONI IS ONE OF THEM, AUTODESK, BERKELEY LIGHTS, PIVOTAL, THOSE ARE ALL CITED IN OUR MOTION TO DISMISS AND THEY ALL SPEAK TO THE SAME IDEA, RIGHT, YOU CAN'T GO OUT THERE AND SAY THERE WERE PROBLEMS AND HAVE A CW THAT SAYS THERE WERE PROBLEMS BUT NOT IDENTIFY WITH ANY LEVELING OF PARTICULARITY WHAT THOSE ISSUES WERE, RIGHT, AND WHAT THE PROBLEMS THAT WERE HAPPENING AND HOW THEY RELATED TO REVENUE AND HOW THE COMPANY WAS GENERATING REVENUE DURING THIS

TIME PERIOD.

CW2, NONE OF THE CW'S PROVIDE THAT LINK, AND THAT IS ULTIMATELY WHAT MAKES THE ALLEGATIONS INSUFFICIENT.

I'M LOOKING BACK TO MAKE SURE I RESPONDED TO ALL OF HER POINTS.

YOU KNOW, SHE MENTIONED THE SNAP CASE WHICH THEY SUBMITTED AS SUPPLEMENTAL AUTHORITY.  WHEN WE SAW THAT WE THOUGHT, OH THAT'S INTERESTING THAT THEY SUBMITTED THAT.  OUR VIEW IS THAT SHOWS EXACTLY WHAT IS MISSING IN OUR CASE, AND I THINK YOU POINTED THAT OUT, THE ALLEGATIONS IN THAT CASE SHOWED CW'S WHO PROVIDED A SPECIFIC DISCONNECT BETWEEN WHAT THE COMPANY WAS SAYING PUBLICLY AND WHAT WAS HAPPENING BEHIND CLOSED DOORS. AND THAT'S EXACTLY WHAT'S MISSING HERE IS THOSE SPECIFIC ALLEGATIONS THAT POINT TO THAT DISCONNECT, AND WE DON'T HAVE THAT HERE.

YOUR HONOR, I'M HAPPY TO ADDRESS SCIENTER IF YOU WOULD LIKE TO GO THERE, I THINK THAT I OBSERVED THAT MAYBE YOU ARE LESS INTERESTED IN HEARING ABOUT THAT, BUT IF YOU WOULD LIKE TO HEAR ABOUT THAT, I'M HAPPY TO RESPOND AS WELL.

THE COURT:  I'M LESS INTERESTED IN HEARING ABOUT THAT, BUT JUST FOR COMPLETENESS OF RECORD, IF YOU JUST WANTED TO BRIEFLY ADDRESS THE POINTS, FEEL FREE.

MS. HILL:  OUR MOTION REALLY LAYS OUT OUR VIEWS ON SCIENTER, WHICH IS THAT THEY HAVE THROWN A LOT OF SPAGHETTI AGAINST THE WALL IN AN EFFORT TO MAKE SOMETHING STICK, BUT IF

YOU LOOK AT EITHER EACH OF THOSE ALLEGATIONS INDIVIDUALLY OR WHOLISTICALLY, THEY DIDN'T PASS MUSTER.

I NOTED THAT COUNSEL SPECIFICALLY REFERRED TO DEFENDANT LESTIYO.  SHE'S RIGHT TO DO THAT BECAUSE DEFENDANT LESTIYO IS THE ONLY DEFENDANT THAT IS ALLEGED TO HAVE ANY CONTACT WHATSOEVER WITH THE CW'S, AND DEFENDANT LESTIYO ALSO COINCIDENTALLY ONLY HAS ONE STATEMENT OF THE 40 STATEMENTS IN THE SECOND AMENDED COMPLAINT, 39 OF THEM ARE ATTRIBUTED TO DEFENDANT RICCITIELLO AND DEFENDANT VISOSO, AND YET NO CW IS ALLEGED TO HAVE ANY CONTACT WITH EITHER ONE OF THEM AT ALL DURING THE CLASS PERIOD.

COUNSEL SUGGESTED THAT, WELL WE CAN INFER THAT IF LESTIYO GOT CERTAIN REPORTS, SHE SHARED THOSE REPORTS WITH DEFENDANT RICCITIELLO AND DEFENDANT VISOSO.  I HAVE NO IDEA WHAT SHE'S BASING THAT ON, THAT'S SIMPLY NOT IN THE COMPLAINT AND I DON'T THINK THAT'S SUPPORTED BY THE LAW.

THERE ARE NO ALLEGATIONS OF ANY ONGOING COMMUNICATIONS, MEETINGS, RELATIONSHIP BETWEEN DEFENDANT LESTIYO AND THE REMAINING TWO DEFENDANTS.  THE FACT THAT THEY'RE ALL EXECUTIVES IN THE COMPANY, AS COUNSEL POINTS OUT, DEFENDANT LESTIYO IS SPECIFICALLY ASSIGNED TO THE OPERATE BUSINESS UNIT, WHEREAS DEFENDANTS VISOSO AND DEFENDANT RICCITIELLO ARE OVER THE LARGER UNITY BUSINESS.

SO THE COMPLAINT DOES NOT HAVE ALLEGATIONS THAT WOULD SUPPORT ONGOING RELATIONSHIP BETWEEN DEFENDANT LESTIYO AND THE

OTHER DEFENDANTS THAT WOULD SUPPORT THIS TRANSFER OF INFORMATION, IT'S SIMPLY NOT IN THE COMPLAINT ANYWHERE THAT I CAN SEE.

AND WITH THAT, I WILL -- THAT'S WHAT I NEED TO SAY.

THANK YOU.

THE COURT:  OKAY.  SUBMITTED.

MS. VILLEGAS:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.

THE ARGUMENT WAS HELPFUL AND INFORMATIVE.  THANK YOU TO BOTH COUNSEL.

MS. VILLEGAS:  THANK YOU.

MS. HILL:  THANK YOU.

(THE PROCEEDINGS WERE CONCLUDED AT 11:27 A.M.)

**CERTIFICATE OF REPORTER**

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATE:  2/17/25